WILLIAMS v. FULKES.

Opinion delivered April 8, 1912.

1. EVIDENCE—EXPERTS—HYPOTHETICAL QUESTIONS.—Hypothetical questions propounded to an expert witness must embrace all the undisputed facts that are essential to the issue about which he is testifying. (Page 199.)

2. SAME—MENTAL CONDITION—OPINION OF NONEXPERT.—When a person's mental condition or capacity is in issue, the opinions of nonexpert witnesses are admissible only when the specific facts upon which the opinions are based are stated, or the testimony must show that such

close and intimate relations have existed between the witness and the person alleged to be insane as fairly to lead to the conclusion that their opinions will be justified by their opportunities for observation. (Page 199.)

3.  APPEAL AND ERROR—CONCLUSIVENESS OF FORMER OPINION.—A decision in the cause on a former appeal is the law of the case, whether right or wrong.  (Page 200.)

4.  HUSBAND AND WIFE—LIABILITY FOR WIFE'S SLANDER.—The common law rule that a husband is liable for a slander committed by his wife in his absence and without his participation has not been abrogated by the married woman's statute.  (Page 200.)

Appeal from Greene Circuit Court, First Division; *W. J. Driver*, Judge; reversed.

*Huddleston & Taylor*, for appellants.

1.  The court erred in refusing to permit Mrs. Brewer, Mrs. Lunsford and other witnesses to state whether or not, in their opinion the defendant, Nancy Williams, was sane or insane at the time she made use of the language complained of.  Ample foundation was laid for the questions asked on this issue, and it is well established that nonexpert testimony is admissible.  64 Ark. 523; 76 Ark. 286; 15 Ark. 555; 17 Ark. 292; 111 U. S. 612; 1 Wigmore, Ev. 681; 3 *Id.* 2570; 22 Ark. 92; 54 Ark. 588; 55 Ark. 259; 16 Ala. 776; 71 Ala. 385; 98 Mich. 183, 58 Miss. 741; 13 Ala. 68; 36 Ala. 514; 83 Ga. 647; 91 Ind. 141, 36 W. Va. 563.

2.  Hypothetical questions must embrace undisputed facts that are essential to the issue.  87 Ark. 243.

HART, J.  This is the second appeal in this case. The opinion on the first appeal is reported in 92 Ark. 487, under the style of *Jackson* v. *Williams*.  The plaintiff has since married, and is now Dora Jackson Fulkes.  Upon the remand of the cause, the defendant, J. M. Williams, filed an answer in which he admitted that his wife and codefendant, Nancy Williams, in conversation with some of her neighbors charged that the plaintiff, Dora Jackson Fulkes, had been guilty of adultery with her husband (and codefendant) and that such charge was false.  He claimed that he was not present, and had no knowledge of her statements.  He also interposed, as a defense to the action, the insanity of his wife at the time she made the utterance.  There was a trial before a jury, which resulted in a verdict for the plaintiff.  The defendants have appealed.

Doctor H. N. Dixon testified as an expert witness. We quote from his cross examination, as follows:

"Q. How long does the menstrual period remain? I mean by that the duration monthly?

A. Anywhere during that period of her life.

Q. How long does it stay monthly?

A. Normally, they say from five to eight days.

Q. Suppose, Doctor, that you were called to see a lady who was irrational, who said that her periods were on her, and you did not examine either the napkin or other cloth that she was using to discover the nature and kind of the flow, and who had been subpoenaed as a witness not more than thirty minutes before, and who was defendant in a lawsuit involving thousands of dollars damages, would you pronounce her insane?''

Counsel for defendants objects. Objection overruled, and exceptions saved.

"Q. A lady is up and going around attending to her ordinary household duties, say an hour before you called or when you arrived; you go in and you ascertain that she has been subpoenaed as a witness in a lawsuit in which she is a party, involving several thousand dollars; she appears irrational; she says she has her monthly period on her; you make no examination of the flow or of the cloth which she is using, would you pronounce that woman insane on that kind of an examination and that kind of a history of her case?"

Counsel for defendants objects: 'Objection is overruled, exceptions saved.

"A. With that examination alone, I would not be justified in pronouncing a woman insane."

Counsel for the defendant urges as error the action of the court in admitting this testimony, and we think the objection is well taken.

Doctor Thorn had been requested by Doctor Williams to visit his wife during a term of the court at which this case was pending for trial. He testified as a witness for the defense, and stated that the defendant Nancy Williams was insane. The particular questions above set out evidently were intended to cover the facts and circumstances surrounding this visit of Doctor Thorn and the acts and appearance of Mrs. Williams at this time, and by the opinion of Doctor Dixon to contradict

that of Doctor Thorn. There is nothing in the record tending to show that Mrs. Williams had been subpoenaed or notified that she would be expected to attend the circuit court just prior to the time that Doctor Thorn called to visit her. Moreover, the examination of Doctor Thorn as to the insanity of Mrs. Williams was not based wholly on what occurred during that visit or the examination of Mrs. Williams that he then made. He had been acquainted with Mrs. Williams for several years, and during the year prior to this visit had been called to see her at intervals. He also frequently met her on other occasions. He testified that Mrs. Williams was insane, but his opinion as to her sanity was not based alone on the visit detailed in the hypothetical question, but was, in part at least, the result of knowledge of her mental state formed by observations of her conduct and by visits during the year previous to the occasion in question. He states that the result of his examinations and visits to the defendant Mrs. Williams showed that she was suffering from what is familiarly called "change of life." He stated that during her menstrual period she was nervous and highly excitable. That sometimes she could not talk coherently. Thus it will be seen that his examination as to her insanity was not based on her appearance or the examination he made at that one visit. It was the result of his previous acquaintance, observation and knowledge of her condition. The condition of the defendant during her menstrual periods as described by Doctor Thorn was undisputed. It is well settled in this State that hypothetical questions propounded to an expert witness must embrace all the undisputed facts that are essential to the issue about which the expert is testifying. *Ford* v. *Ford*, 100 Ark. 518; *Taylor* v. *McClintock*, 87 Ark. 243.

It follows that the court erred in admitting the answer of Doctor Dixon to the hypothetical question set out above. The hypothetical question should have embraced all of the undisputed facts upon which Doctor Thorn formed his opinion before it could be used as a basis of an opinion by Doctor Dixon to contradict that of Doctor Thorn. In other words, Doctor Dixon could not intelligently speak of the mental state of Mrs. Williams from the viewpoint of Doctor Thorn unless he was put in possession of all the undisputed facts from which Doctor Thorn based his opinion.

The defendant offered to introduce nonexpert witnesses on the question of insanity of Mrs. Williams, and the court excluded the testimony. Inasmuch as the judgment must be reversed for the error already indicated, we do not deem it necessary to decide whether the act of the court in this respect was prejudicial here. But, for the guidance of the court and of the parties on a retrial of the cause, we will declare the principles of law which govern the admission of such testimony. In the case of *Shaeffer* v. *State*, 61 Ark. 245, Mr. Justice BATTLE, speaking for the court, said:

"When a person's mental condition or capacity is in question, the opinion of witnesses, who are not experts, as to such capacity, are only admissible in evidence when taken in connection with the facts upon which such opinions are based. Before such evidence can be admissible, the specific facts upon which the opinions are based must first be stated by the witnesses, or the testimony must show that such close and intimate relations have existed between the party alleged to be insane and themselves as fairly to lead to the conclusion that their opinions will be justified by their opportunities for observing the party. In other words, the opinion of such a witness is not admissible in evidence until it first be shown by his own testimony that he has information upon which it can reasonably be based. Whether the information is sufficient for that purpose is a question for the court to decide before it can be admitted. After its admission the weight to be given it is determined by the jury." To the same effect: *Kelley's Heirs* v. *McGuire*, 15 Ark. 555; *Green* v. *State*, 64 Ark. 523; *Byrd* v. *State*, 76 Ark. 286; *Bolling* v. *State*, 54 Ark. 588.

In every case the nonexpert witnesses who speak from their own observations are expected to describe as well as they can what has led to their conclusion as well as their means of observations. That is to say, a statement of the facts on which the opinion is based should accompany the opinion of nonexpert witnesses as well as their means of observation and opportunity to acquire knowledge of the mental condition of the person about whose sanity or insanity they testify.

We are also asked by counsel for defendant to overrule our decision on the former appeal of this case where we held that the common-law rule that a husband is liable for a slander committed by his wife in his absence and without his partici-

pation has not been abrogated by the married woman's statute of this State.

It would do the defense no good in this case to overrule that decision, for the decision on the former appeal is the law of the case, and, whether right or wrong, must govern all future proceedings in the trial of . this case. . As stated in our former opinion, I think the decision was both unwise and unjust, but a majority of the judges differed with me then and differ with me now. The authorities bearing on the question are about equally divided, and a majority of the court is of the opinion that our decision of that question on the former appeal is sustained by the better reasoning and adhere to it.

Other assignments of error are pressed upon us by counsel for the defendant as a reason why the judgment should be reversed; but as these assignments are based on matters which are not likely to occur on a retrial of the case, we do not deem it necessary to decide them.

For the error indicated, the judgment will be reversed, and the cause remanded for a new trial.