EMINENT HOUSEHOLD OF COLUMBIAN WOODMEN *v.* HOWLE.

## Opinion delivered June 5, 1916.

1. APPEAL AND ERROR—FORMER APPEAL.—Where the facts are the same, the law, as declared on a former appeal, will be controlling on a second appeal.

2. EVIDENCE—SANITY—NON-EXPERT WITNESSES.—Non-expert testimony as to deceased's sanity is admissible, when the witnesses show proper familiarity with his habits and conduct.

3. ASSAULT—TEMPORARY INSANITY—USE OF INTOXICANTS.—It is no defense, that deceased was temporarily insane when he committed an assault, where such temporary insanity was produced by the voluntary and recent use of ardent spirits.

4. CRIMINAL LAW—DRUNKENNESS AS A DEFENSE.—Voluntary drunkenness is no excuse for the commission of a crime.

5. ASSAULT—DRUNKENNESS—TEMPORARY INSANITY.—Where one has threatened to kill another, and with that purpose in his mind, has imbibed intoxicating liquors in order to embolden him to the deed, and commits the deed while his reason is temporarily dethroned from the use of intoxicants, he is nevertheless guilty of a crime.

Appeal from White Circuit Court; *J. M. Jackson,* Judge; reversed.

*Brundidge & Neelly,* for appellant.

1. The court erred in its charge to the jury and in refusing defendants prayers No. 1 and 8.  120 Ark. 530; 98 Ark. 135; 98 *Id.* 232; 109 *Id.* 402; 54 *Id.* 588; 51 *Id.* 244.

*Rachels & Yarnell* and *John E. Miller,* for appellee.

1. Howle was insane.  103 Ark. 196; 76 *Id.* 286; 118 Ark. 226.

2. There is no error in the court's instructions. 89 Ark. 230; 81 *Id.* 205; 71 *Id.* 299; 104 *Id.* 417; 79 *Id.* 172; 78 *Id.* 574; 89 *Id.* 24; 105 *Id.* 213; 101 *Id.* 353; *Ib.* 469; 76 N. Y. 426; 11 N. E. 620; 91 *Id.* 230; 43 Ind. App. 126; 6 L. R. A. 731; 42 *Id.* 247; 97 Iowa, 226; 136 U. S. 276; 170 Ill. App. 79; 57 Mo. App. 87; 53 L. R. A. 743, etc.  But if there was error it was not prejuidical.

WOOD, J.  This is the third appeal in this case. (*Eminent Household of Columbian Woodmen* v. *Howle,* 109 Ark. 400; *Id.* 118 Ark. 226).  The facts are stated in the first opinion.

John W. Howle was shot and killed while a member of appellant fraternal insurance company.  This suit was brought by the appellee, his wife, as beneficiary in a policy for the sum of $1,000.  Howle was killed by a marshal of the town of Searcy.  Howle made an attack upon the marshal by shooting at him twice.

First:  The first question to be determined on this appeal is whether or not the appellant can contest the policy under the clause which reads: "This covenant shall not be contested except for misrepresentation in the application or in the health statement, providing this guest has complied with the conditions of this covenant."

(1)  On the second appeal we said: "It is too late to raise the question now that under a clause in the policy, appearing to limit the grounds for contest thereof to two, not including the death of the insured while engaged in the violation of the law, that such provision can not be considered a defense, it having been held in

the former opinion, which is the law of the case, that such provision of the by-laws became a part of the contract of insurance and constituted a defense to the suit." Appellee contends that this was not a correct statement of the holding on the first appeal. But be this as it may, the declaration in the last opinion to the effect that the provision in the policy holding that a violation of the law on the part of Howle resulting in his death was a defense to the action under the by-laws of appellant is the law of this case. For the facts on this hearing are precisely the same as they were on the second appeal, and what we said on this issue in the opinion on that appeal is the law of the case. *Morgan Engineering Co.* v. *Cache River Drainage Dist.,* 122 Ark. 491.

The court did not err therefore in allowing the case to go to the jury on the issue as to whether or not the death of Howle occurred while he was engaged in a violation of the law.

Second: Witnesses on behalf of the appellee testified to the effect that they had known Howle for periods ranging from eight to twenty-five years; that they had been intimately acquainted and closely associated with him; that when they talked with him about his trouble with Sowell at times he would go crazy mad and nothing could be done with him. One witness stated that "He would go to pieces and looked like his mind would leave him." Another witness stated that when he talked with him concerning his trouble with Sowell "he acted like a crazy man." Another stated, "He would go off and go wild when the subject of his trouble with Mr. Sowell was raised; he would not have any reason about him at all."

(2) These witnesses testified that in their opinion Howle, at the time of the killing, was crazy. The witnesses sufficiently detailed the facts upon which their testimony was based to make the same competent, although they were not experts, and the case is ruled in this particular by *Williams* v. *Fulkes,* 103 Ark. 196. Several of the witnesses testified that he was crazy on

the subject of his troubles with Sowell. Some of them testified that when he was in this frame of mind he would be drinking, while the testimony of others showed that he seemed to be crazy on the subject of his troubles with Sowell when not drinking.

There was testimony tending to prove that Howle and Sowell had had trouble before the killing, and that on the day and at the time of the killing Howle "looked like he was drinking pretty heavy." It was shown that Howle had made frequent threats to kill Sowell, covering a period of about three months before the killing. One of the witnesses stated that he never made these threats except when he was drinking. This witness also stated that Howle did not appear to be insane or crazy. There was testimony to show that it was the habit of Howle to get drunk. It was shown that he had conducted a restaurant in Searcy and had carried the mail to Kensett. One witness stated that Howle went about his business, attended to it all right, carried the mail and ran a restaurant. This witness stated that in his opinion Howle was crazy because he would get very angry and would want revenge.

(3) Among other alleged errors of which appellant complains was the refusal of the court to give the following prayers for instructions:

"1. The court instructs the jury that one, who, in possession of a sound mind, commits a criminal act, under the impulse of passion or revenge, which may temporarily dethrone his reason, or for the time being control his will, can not be shielded from the consequences of the act by the plea of insanity."

"8. The jury are instructed that if you believe from the evidence in this case that at the time the deceased Howle made an attack upon the town marshal of the city of Searcy, he was temporarily insane, and that such temporary insanity, if such there was, was produced by the voluntarily recent use of ardent spirits, it would afford no excuse for the assault made by him upon the officer, if the act was otherwise criminal."

(4)    Instruction No. 1 was sufficiently covered by instruction No. 9,* given at the request of appellee.    While   instruction   No.   8   might   have   been more   aptly   drawn,   it   was   a   correct   declaration of law and was applicable to the facts above set forth and should have been given.  This instruction was intended to submit the issue covered by that phase of the testimony which tended to prove that sometimes when Howle would get mad and threaten to kill Sowell that he would be drinking.   The instruction was intended to declare the well known doctrine of the criminal law that voluntary drunkenness is no excuse for crime.   Kirby's Digest, section 1557; 1 Bishop Cr. Law, section 400-1.

(5)    Where one has threatened to kill another and with that purpose in his mind has imbibed intoxicating liquors in order to embolden him to the deed, and he commits the deed while his reason is temporarily dethroned from the use of intoxicants, he is nevertheless guilty of a crime.   When one has been "in his cups" so often and so long as to produce a disease of the mind which renders him incapable of forming a specific intent, and acting under the influence of and impelled alone by such disease, he kills another, he will not be guilty.  But temporary insanity, caused by voluntary intoxication, is not such a disease of the mind.  1 Bishop Cr. Law, § 406.

The instruction is in accord with the doctrine of criminal law often announced by this court.   See the recent case of *Bell* v. *State,* 120 Ark. 530, 180 S. W. 186-196, where we said:   "But it must be remembered that one who is otherwise sane will not be excused for a crime

---

*9.   The jury is instructed that if you find from the evidence that at the time the deceased Howle made the assault upon the marshal Sowell, he knew right from wrong, and he knew it was wrong to make said assault, then, under the law, he was sane, unless you find that at the time he was acting under an irresistible impulse arising from a defect in his will caused by the diseased condition of his mind, and was not acting from mere anger or revenge.

which he has committed while his reason is temporarily dethroned, not by disease, but by anger, jealousy or other passion." See also *Casat* v. *State*, 40 Ark. 511-519. The instruction was essential to make the charge of the court as a whole a correct statement of the law.

We have carefully examined the other instructions to which objection is urged and find no reversible error in any of them. But for the error in refusing to give appellant's prayer No. 8, the judgment is reversed and the cause remanded for a new trial.