GRIFFIN v. UNION TRUST COMPANY.

Opinion delivered December 8, 1924.

1.  WILLS—EXCLUSION OF EVIDENCE.—In a will contest where the court excluded testimony as to injuries suffered by testatrix, several years before her death, as being too remote, but later changed the ruling and admitted similar testimony, failure of appellant to renew the offer precludes appellant from insisting that the court erred in excluding the testimony.

2.  EVIDENCE—STATEMENT OF TESTATRIX.—In a will contest, evidence as to statements made by testatrix to others concerning various injuries suffered by her and claimed to have affected her mental condition was hearsay.

3.  APPEAL AND ERROR—HARMLESS ERROR.—The exclusion of immaterial testimony is harmless error.

4.  WILLS—MENTAL ATTITUDE OF TESTATRIX TOWARD RELATIVES.—In a will contest based upon charges of undue influence and mental incapacity, testimony that testatrix had complained of the selection by her sister of a burial place for a favorite niece who had been named by her as principal beneficiary in a prior will was competent as tending to show her mental attitude towards her relatives.

5.  EVIDENCE—OPINION OF NONEXPERTS.—A nonexpert witness may give his opinion as to the mental capacity of a testatrix, after stating the facts upon which such opinion is based.

6.  EVIDENCE—OPINIONS OF NONEXPERTS.—In a will contest, nonexpert witnesses who have known a testatrix for many years and have had opportunities to observe her conduct, are competent to express an opinion as to her mental capacity.

7.  TRIAL—CONSTRUCTION OF CHARGE AS A WHOLE.—In a will contest, based on charges of undue influence and mental incapacity, an instruction dealing with undue influence and mental incapacity in separate sentences, each being a complete statement, is not objectionable, because each ignored the other issue, as the instruction should be read as a whole.

8.  WILLS—OLD AGE AND PHYSICAL INCAPACITY.—A testator's old age, physical incapacity and partial eclipse of the mind will not invalidate his will if he has sufficient capacity to remember the extent and condition of his property and who are his beneficiaries, and to appreciate the deserts of his relatives.

9.  WILLS—PHYSICAL SUFFERING.—Physical suffering does not render a testator incompetent to make a will unless it renders him incapable of making a will and of properly disposing of his estate.

10. WILLS—MODIFICATION OF INSTRUCTION.—In a will contest, a requested instruction that a mere suggestion to the testatrix was sufficient to constitute undue influence was properly refused as being on the weight of the testimony.

Appeal from Pulaski Circuit Court, Third Division; Marvin Harris, Judge; affirmed.

*Mehaffy, Donham & Mehaffy,* for appellant.

The court erred in excluding testimony offered by the contestant as to undue influence. 29 Ark. 156; 103 Ark. 236; Alexander on Wills, vol. 1, p. 361. The court erred in admitting testimony of nonexpert witnesses as to the sanity or insanity of Mrs. Wells. Alexander on Wills, vol. 1, p. 386; 36 S. E. 634. The court erred in refusing to give instructions requested by the contestees on the question of undue influence and mental capacity, as set out in the opinion. 29 Ark. 151; 87 Ark. 243; 37 Ark. 164; 90 Ark. 426; 36 Pac. 925; 104 N. W. 1087; 83 N. E. 766; 57 S. E. 898.

*W. H. Martin* and *T. E. Helm,* for appellees.

The court did not err in permitting the testimony as to the sanity of Mrs. Wells to go to the jury. 72 So. 395; 156 Cal. 230; 104 Pac. 443; 15 Ark. 601; 114 Ark. 69; 122 Ark. 417.

McCULLOCH, C. J. This is a contest of the last will and testament of Mrs. E. G. Wells. The judgment of the circuit court of Pulaski County, rendered upon the verdict of the trial jury, sustained the validity of the will, and the contestants have appealed.

The testatrix, Mrs. Wells, resided in the city of Little Rock, and died here on August 29, 1922, the testamentary paper in controversy having been executed by her in due form of law on July 24, 1922. Mrs. Wells was unmarried at the time of her death, and childless, and she left as her heirs at law three sisters, a brother, a niece— the daughter of a deceased brother—and five others, the children of another deceased brother. She bequeathed the sum of one dollar to each of her said heirs, and the remainder of her estate to Mrs. Minnie Jean Waller, who was not related to the testatrix by blood or marriage, but

was merely a friend of long standing and whom, according to the testimony, the testatrix held in affectionate regard. Mrs. Wells was sixty-six years of age at the time of her death, and had resided in Little Rock more than forty years. She was a stenographer by profession, and followed that work in different lines for many years. She did stenographic work in several business institutions, covering a period of many years, and for a number of years before her death, in addition to working as a stenographer, she operated a school for the purpose of instructing others in the art. She accumulated by her own work and thrift property of considerable value, the property consisting of both real estate and personalty.

At the time of the execution of the will Mrs. Waller, the chief beneficiary, was out of the State, and did not return until after the death of the testatrix.

Mrs. Wells became seriously ill a short time before the execution of the will, and was confined to her room in her own home. She was nursed by Mrs. Scroggins, the mother of Mrs. Waller, and was also attended by Mrs. Brooks, a sister of Mrs. Waller. Physicians also attended her regularly, and they testified in the case with reference to her mental condition at or about the time of the execution of the will and from then on up to the time of her death.

The contest is based on the charge of undue influence and mental incapacity of the testatrix. The testimony in the case is voluminous, but it may be said, speaking generally, that it was conflicting upon both of the issues involved. A number of witnesses, including two of the contestants, a sister and a brother of the testatrix, testified that they were long and intimately acquainted with the testatrix, and that she was of low mentality at the time of the execution of the will, and, in their opinion, not of sufficient mental capacity to execute a will. On the other hand, the witnesses were very numerous on the part of the contestee, who testified to a long acquaintance with the testatrix, of her successful business career, her strength of mind and her admirable business qualifica-

tions, and that she was fully capable of transacting business and of executing any kind of conveyance up to the time of her death. Physicians who attended the testatrix also testified that her mental condition was sound.

We are of the opinion that the evidence was abundantly sufficient to sustain the finding of the jury, both as to the charge of undue influence and lack of mental capacity.

There are numerous assignments of error with respect to the rulings of the court upon the admissibility of testimony.

It appears from the testimony that Mrs. Wells underwent a serious surgical operation in the year 1885, that she jumped from a train in the year 1900 and sustained a fracture of her hip, and that, some time thereafter, she sustained a fracture of one of the bones of her arm. There is also testimony that she was afflicted with cancer and was operated on during the year 1918, or about that time. There is testimony to the effect that all of these various troubles affected her health, and that she suffered a great deal.

The first witness introduced was Mrs. Shelton, who was a sister of Mrs. Wells, and is one of the contestants. She testified that Mrs. Wells was operated on about the year 1885, and that she had never fully recovered from that operation. She mentioned the fact of Mrs. Wells jumping from the train and breaking her hip in the year 1900, and that she nursed her through that period, but the court excluded those statements. She also offered to testify that the testatrix had told her about breaking her arm, and that was excluded on the ground that it was hearsay. Those rulings are both assigned as errors. The theory of the court in excluding the testimony about the broken hip was that it was too remote and was not connected up by showing that its effect upon the health and mental condition of the testatrix continued up to the time of the execution of the will. The other statement was excluded for the reason that it was merely the statement of the testatrix and constituted hearsay, and fell within

the rules of evidence excluding that kind of testimony. The court subsequently permitted appellant to prove by two other witnesses the fact that Mrs. Wells jumped from the train and broke her hip in the year 1900, and suffered for a long time thereafter from the effects of this accident. This testimony was undisputed, and no prejudice could possibly have resulted in the court's ruling in refusing to permit Mrs. Shelton to testify to that fact. When it was connected up by other testimony tending to show repeated injuries and illness on the part of the testatrix which might have affected her mental capacity, the court permitted everything that had happened to her for a long time past, including the operation in 1885 and the fractured hip in 1900, to be proved by the witnesses, and their opinions were given as to the probable effect upon her mental capacity. To say the least of it, the court's ruling on this subject constituted no more than a change in the rulings of the court in permitting testimony to be introduced, and, if appellants desired to take advantage of that change after the court had ruled the testimony to be competent, another offer should have been made to introduce it. The failure to do this precludes appellants from insisting now that the court erred in excluding the testimony originally.

The other excluded statement as to what the testatrix told the witness concerning the various injuries was mere hearsay, and properly excluded. In *Mason* v. *Bowen,* 122 Ark. 407, after full consideration of the questions involved, we made the following statement of the law which is applicable to this as well as other rulings of the court:

"It seems to be well settled, both by text-writers and the decisions of courts of the various States, that the statements and declarations of a testator, whether made before or after the execution of a will, are not competent as direct or substantive evidence of undue influence, but are admissible to show the mental condition of the testator at the time of making the will. When the condition of the testator's mind is the point of contention, state-

ments or declarations of the testator are received as external manifestations of his mental condition and not as evidence of the truth of the things he states. If offered to prove an external fact, such as undue influence or fraud, such statements or declarations are merely hearsay and are liable to all the objections to which mere declarations of third parties are subject.''

Now, the fact that Mrs. Wells received these various injuries may have had some influence upon her mental state, and proof of those facts was competent as bearing on that question, but the facts could not be established by hearsay testimony, and the statement of the testatrix herself concerning those facts fell within the rule against hearsay testimony.

The contestee introduced as a witness Mrs. Auten, who was a friend of Mrs. Wells, and on cross-examination she was asked about certain statements that she had made to another witness, Mrs. Bracy. She stated that she had talked with Mrs. Bracy about Mrs. Wells and stated that the latter was eccentric; said she did not remember telling Mrs. Bracy about the conduct of Mrs. Wells concerning the preparation of a chicken for food. Her statement was somewhat indefinite as to her recollection of the conversation with Mrs. Bracy, but she admitted that she had talked to Mrs. Bracy and expressed the opinion that Mrs. Wells was somewhat eccentric in her conduct. Appellants introduced Mrs. Bracy for the purpose of contradicting Mrs. Auten, and she testified, without objection, as to what Mrs. Auten said about her opinion of Mrs. Wells' mental condition and about some eccentricities manifested in the dressing of a chicken. The witness, without being asked on the subject, commenced to tell about what Mrs. Auten said concerning the conduct of Mrs. Wells in the placing of a rug on the floor, and the court excluded that. The testimony of Mrs. Auten as abstracted by appellants does not disclose that anything was asked her about her alleged statement to Mrs. Bracy concerning the rug. Of course, it was not competent to ask Mrs. Bracy about any statement the foundation of

which was not laid by asking Mrs. Auten concerning the ·matter. However, we do not think there could have been any prejudice, even if the court had erroneously excluded the statement concerning Mrs. Wells' conduct about the rug. The witness, Mrs. Bracy, was permitted to tell all about her conversation with Mrs. Auten and the latter's statement concerning eccentricities ·of the testatrix, and the statement about the rug could have added nothing to the· contradiction of the witness. We cannot see any possible error in the ruling of the court in this regard.

It is disclosed in the testimony that Mrs. Sheldon's daughter, Elaine, a niece of the testatrix, died in the year 1918, and that, prior to that time, the testatrix had made a·will leaving the bulk of her estate to Elaine. Mrs. Waller, the contestee, testified over objections of appellants that Mrs. Wells made a statement to her complaining about the act of her sister in selecting a burial place for the body of Elaine, ·and said that if they, meaning her sisters, "didn't want Elaine's body, they could have · given it to me." It is insisted that this testimony was not competent. We think it was competent as a declaration of the testatrix tending to show her mental attitude towards her relatives, who would otherwise be the natural objects of her bounty. The testimony comes within the rule stated in *Mason* v. *Bowen, supra.*

There are numerous assignments of error with respect to the action of the court in permitting nonexpert witnesses to testify concerning the mental capacity of the testatrix. All of the witnesses in question were acquaintances of long standing and had opportunities for observing the mental condition of the testatrix, but in giving ·their testimony they first stated their knowledge of and length of acquaintance with the testatrix, where they had known her, what their opportunities were for observing her conduct, and they were then permitted to state their opinions as to her mental capacity. The decisions of this court on the subject are harmonious, and each is to the effect that a nonexpert witness may testify as to his opinion after stating the facts upon which the opinion

is based, so that the jury may determine what weight to give to the testimony.  *Kelly's Heirs* v. *McGuire*, 15 Ark. 555; *Bolling* v. *State*, 54 Ark. 588; *Shaeffer* v. *State*, 61 Ark. 241; *Green* v. *State*, 64 Ark. 523; *Byrd* v. *State*, 76 Ark. 286; *Williams* v. *Fulkes*, 103 Ark. 196; *Eminent Household Col. Woodmen* v. *Howle*, 124 Ark. 224.  The rule on this subject was stated by Judge BATTLE in the case of *Shaeffer* v. *State, supra,* as follows:

"When a person's mental condition or capacity is in question, the opinions of witnesses who are not experts as to such capacity are only admissible in evidence when taken in connection with the facts upon which such opinions are based.  Before such evidence can be admissible, 'the specific facts upon which the opinions are based must first be stated by the witnesses, or their testimony must show that such intimate and close relations have existed between the party alleged to be insane and themselves as fairly to lead to the conclusion that their opinions will be justified by their opportunities for observing the party.'  In other words, the opinion of such a witness is not admissible in evidence until it be first shown by his own testimony that he has information upon which it can reasonably be based.  Whether the information is sufficient for that purpose is a question for the court to decide before it can be admitted.  After its admission, the weight to be given it is determined by the jury."

The decisions in all of the other cases are in harmony with the above statement.  In the early case of *Kelly's Heirs* v. *McGuire, supra,* on the subject of the admissibility of testimony of nonexpert witnesses, the court said:

"We found our judgment on facts, circumstances, and acts detailed by the witnesses—holding, at the same time, opinions to be competent in all cases where the object is to prove capacity or incapacity to make a contract, where the facts or circumstances are disclosed on which the opinion is founded.  There are strong reasons for it.  Human language is imperfect, and it is often impossible to describe in an intelligible manner the operation of the mind of another.  We learn its conditions only

by its manifestations, and these are indicated not alone by articulate words, but by signs, gestures, conduct, the expression of the countenance, and the whole action of the man. Nor is there any danger from such opinions, when the reasons for them are disclosed. The value and force of the opinion depends on the general intelligence of the witness, the grounds · on which it is based, the opportunities he had for accurate and full observation, and his entire freedom from interest and bias.''

All of the witnesses to whose testimony objection was made were persons who had known Mrs. Wells for many years, had employed her or been associated with her in her employment, and had had opportunities to observe her conduct, and they were competent witnesses to express an opinion as to her mental capacity. It was not essential that they should be able to state facts and circumstances which would demonstrate to the jury the degree of mental capacity of the individual in question, but the bare fact that her conduct under their observation had not been such as to affirmatively demonstrate lack of mental capacity was sufficient to justify them in the expression of an opinion. We are of the opinion that the testimony of each of· the witnesses in question falls within the decision of this court holding such testimony to be competent, and that no error was committed by the court in this regard.

Error of the court is assigned in giving the following instruction at the instance of the contestees:

''The issue to be tried in this case is whether the instrument of writing offered for probate is the last will and testament of Mrs. E. G. Wells. Under the laws of Arkansas every person of the age of twenty-one years and over, of sound mind and disposing memory, may by last will and testament devise all of his estate, real and personal, as he sees fit. He may discriminate between those equally related to him, or may dispose of his entire estate entirely to strangers, to the exclusion of all relatives, and the motives of partiality, affection, dislike or resentment by which he may be influenced will not invalidate the

will if they are not the result of undue influence as defined in these instructions. If he has the mental capacity to make a will, or is not under undue influence as defined in these instructions, it does not matter that he is controlled by motives which are capricious, frivolous or revengeful. You cannot reject this will solely because you may believe it to be unnatural or unjust. The fact that it leaves the estate to a friend outside the family and excludes the relatives does not raise a presumption of lack of capacity.''

The objection made to this instruction is that the sentence on the subject of undue influence ignores the issue of mental capacity, and that the sentence devoted to the subject of mental capacity ignores the question of undue influence. Answering these objections, which are the only ones made to the whole of the instruction, we are clearly of the opinion that the instruction is not open to these objections. This instruction must be read as a whole for the purpose of determining its meaning, and it clearly dealt with both subjects involved in the attack upon the validity of the will, and neither of the issues were excluded or ignored. It would be a very narrow view of the matter to say that a jury composed of intelligent men would construe either of the sentences in the instruction as excluding the issues not mentioned therein. Each sentence dealt with a particular issue and was a complete statement on that subject, but, necessarily, the two sentences embraced in a single instruction must be read together, and it is not conceivable that the jury misunderstood them or treated them as being conflicting or antagonistic.

Separate objections were made to the following instructions, given at the instance of the contestees:

''3. Old age, physical incapacity and partial eclipse of the mind will not invalidate a will, if the testator has sufficient capacity to remember the extent and condition of his property without prompting, to comprehend to whom he is giving it, and be capable of appreciating the deserts and relation to him of others whom he excluded

from participating in his estate. He is not required to do all those things, but should have capacity to do them.

"4. Physical suffering, no matter how intense or how long its duration, will not render one incompetent to make a valid will, so far as mental capacity is concerned, unless it has so affected his mind as to render him incapable of comprehending the act of making the will and of remembering his relatives and their deserts and appreciating the same, and of remembering and disposing of his estate as explained by the other instructions herein."

The giving of each of these instructions is assigned as error, but we are of the opinion that they are both correct declarations of the law on the subjects mentioned, and there is no good reason shown in the argument why they should not have been given.

Appellant requested the court to give instruction No. 7, which is as follows:

"You are instructed that if you believe from the evidence that Mrs. Wells, at the time she executed the will now in question, was feeble in body and mind from sickness, old age, or otherwise, and, while in this condition, Mrs. Scroggin, the mother of the beneficiary under the purported will, suggested to her that she should leave her property to Mrs. Waller, or if the said Mrs. Scroggin had such influence over her because of her bodily and mental weakness and through this influence induced her to make said will, or if you believe from the evidence that the will was the result of undue influence exerted by the said Mrs. Scroggin, and that at the time of the execution of said will the said Mrs. Wells was not a free agent, but was under the undue influence of said Mrs. Scroggin, then you should find against the will."

The court modified the instruction by striking out the words, "and while in this condition Mrs. Scroggin, the mother of the beneficiary under the purported will, suggested to her that she should leave her property to Mrs. Waller." Exceptions were saved to the ruling of the court in making this modification, and the ruling is

assigned as error. The modification by striking out the words was correct, for those words were connected with the succeeding ones by the conjunctive word "or," and, if left in, the instruction would, in effect, have told the jury that a mere suggestion of the mother of the beneficiary was sufficient to constitute undue influence, and this would have been an instruction upon the weight of the testimony. The instruction was complete without these words, and fairly submitted to the jury the issue of undue influence by Mrs. Scroggin, the mother of Mrs. Waller, the contestee.

There are other assignments of error in regard to the court's charge which we do not deem of sufficient importance to discuss.

The evidence was sufficient to support the verdict of the jury upholding the will, and the issues were correctly submitted to the jury.

We find no error in the record, and the judgment is therefore affirmed.