BASS v. WILLEY.

4-8986

226 S. W. 2d 980

Opinion delivered January 30, 1950.

Rehearing denied March 6, 1950.

*John M. Henderson* and *Arthur R. Macom*, for appellant.

*Virgil R. Moncrief* and *John W. Moncrief*, for appellee.

ED. F. McFADDIN, Justice. The only question to be decided on this appeal is whether the Chancery Court was correct in refusing to set aside a decree rendered at a former term. Other questions, injected into

the record and briefs, concern (a) accretion and avulsion, and (b) determination of County boundary lines. These matters, however, are not necessary to a decision of the stated question; and are mentioned for the purpose of negativing any idea that this opinion decides them.

## FACTS

On March 25, *1946,* the Chancery Court of Arkansas County rendered a decree in favor of Willey and against Bass. On March 24, *1947* (one day less than one year after the rendition of the 1946 decree), Bass filed a motion to vacate the 1946 decree. From a refusal of the Chancery Court to vacate the said (1946) decree, Bass brings this appeal. We chronologically list the steps leading up to the present litigation:

1. In 1931 these parties had litigation in the Chancery Court of Arkansas County concerning lands adjacent to those in the present suit. Willey named Bass as a defendant in a suit to quiet Willey's title to land then claimed to be accretion to Sec. 36[1] immediately north of Sec. 1.[2] The Chancery Court refused the confirmation, and Willey appealed. We dismissed the appeal for noncompliance with Rule 9. See *Willey* v. *Bass,* 186 Ark. 1198, 53 S. W. 2d 225. We will refer to this as the 1931 suit.

2. In 1933 Willey filed another suit against Bass, alleging that certain lands described as being Sec. 1, Twp. 8 S., Rg. 4 W. in Arkansas County had been purchased by Bass at a tax sale in 1927; that Willey had purchased the said lands from Bass[3] in 1930 and had immediately rented the lands to Bass by written lease; and that Bass was cutting timber from the lands and should be enjoined. That case was transferred to the Circuit Court and Willey took a voluntary non-suit in 1940. We will refer to this as the 1933 suit.

---

[1] and [2] Sec. 36 is in Township *7* S., Range 4 W.; and Sec. 1 (here involved) is in Township *8* S., Range 4 W.

[3] Bass had purchased the lands in the name of his minor son, and procured a probate Court order authorizing the sale to Willey. Bass then individually rented the same land from Willey.

3. On March 26, 1945, Willey filed suit against Bass alleging (a) that Willey owned the lands described as Sec. 1, Twp. 8 S., Rg. 4 W. in Arkansas County, and (b) that Bass was threatening to cut and remove timber therefrom, etc.; and prayed for an injunction and an accounting. On March 25, 1946 (one day less than one year from the filing) a decree was rendered against Bass, reciting personal service,[4] etc., and stating, *inter alia*:

"WHEREFORE, it is by the court considered, ordered and decreed that the defendant, T. P. Bass, his agents and employees and all persons holding from or under him, be and they are forever and perpetually enjoined and restrained from cutting or severing or disturbing any timber on Section One (1), Township Eight (8) South, Range Four (4) West, and/or the accretions adjoining same or contiguous thereto, all in the Southern District of Arkansas County, Arkansas, and they are perpetually enjoined from removing any timber therefrom:" We will refer to this suit as the 1945 suit, and the decree as the 1946 decree.

4. On March 24, 1947 (one day less than one year after the entering of the 1946 decree) Bass filed in the 1945 suit a motion to vacate the 1946 decree. This motion was filed long after the lapse of the term of court at which the decree was rendered; and the motion was not verified, as required by § 29-506 Ark. Stats. (1947). But, on September 22, 1947, Bass filed a pleading—entitled "Demurrer and Answer"—which was verified, and which sought to set aside the 1946 decree on the theory that there were then no lands in Arkansas County legally describable as being Sec. 1, Twp. 8 S., Rg. 4 W.[5] We refer to Bass' pleading as the 1947 motion.

---

[4] The personal service on Bass is not disputed in this appeal.

[5] Bass pointed out the tendency of the Arkansas River to shift its current and change its banks. He claimed that in the period from 1819 to 1918 land originally described as Sec. 1, Twp. 8 S., Rg. 4 W. in Arkansas County entirely lost its identity as sectionized lands, in that it disappeared because of the erosion of the river. Then, he claimed that from 1918 to 1947 the Arkansas River changed its course and, either by accretion or avulsion, lands came into existence located on the map as were those originally described as Sec. 1, Twp. 8 S., Rg. 4 W. in Arkansas County. Appellant claims, *inter alia*, that

5. The Chancery Court proceeded to have an extended hearing on Bass' 1947 motion.[6] Evidence was allowed on many questions; but the facts as to estoppel are determinative, as will be hereinafter mentioned. On December 1, 1948, the Chancery Court entered a decree which contained findings[7] far beyond the issue, of whether the 1946 decree (enjoining Bass from cutting and removing timber) should be vacated. Bass has appealed from the said decree of December 1, 1948.

## OPINION

There is not involved in this case any question about the power of the Chancery Court to modify a permanent injunction because of changed conditions. (See 28 Am. Jur. 494 and Annotation in 136 A. L. R. 766.) The only question to be decided is whether the Chancery Court was correct in refusing to vacate the 1946 decree: which had enjoined Bass from cutting timber from the same lands which he had conveyed to Willey by the 1930 deed and had subsequently rented from Willey by written contract. We hold that the Chancery Court was correct (a) because of our statutes, and (b) because of the doctrine of estoppel.

these new formed lands are accretions to other continuously existing riparian lands, and cites such cases as *Wallace* v. *Driver*, 61 Ark. 429, 33 S. W. 641, 31 L. R. A. 317, and *Bush* v. *Alexander*, 134 Ark. 307, 203 S. W. 1028.

Against the foregoing appellee claimed, *inter alia*, that the lands sectionized as "Sec. 1, Twp. 8 S., Rg. 4" in Arkansas County never entirely disappeared and that the lands here involved are the original Sec. 1. It is not necessary to decide any of these matters of erosion, accretion and avulsion.

[6] Charles F. Willey died testate pending the hearing; and the cause was revived, in the name of W. H. Willey, his beneficiary and executor.

[7] The Chancery Court indicated that the decree might have some effect on the boundary lines between Arkansas County, Lincoln County and Desha County; but we do not attach any such importance to the decree. Entirely beyond the purview of the present litigation are such questions as:

(a) Whether the land in the bow of the river became an "island" by accretion or avulsion;

(b) Whether the middle of "Moody old River" is the County boundary line;

(c) Whether Cook's point is in Arkansas County; and

(d) Whether "Cook's cut-off of 1926" worked a change in the county boundaries.

The 1946 decree affected only lands that had been north and east of what had been the channel of the Arkansas River prior to the 1918-1946 changes.

I. As to the *statutes*, little need be said: Section 29-506 Ark. Stats. (1947) lists the grounds on which a court may vacate a judgment or decree after the expiration of the term. Bass made no case for relief on any of these grounds.

II. We come then to the *doctrine of estoppel*. Bass claims that the 1946 decree is void on its face.[8] It enjoined him from trespassing on lands in Sec. 1, Twp. 8 S., Rg. 4 W. in Arkansas County; and he says that no such sectionized lands existed in 1946, because he claims that the original sectionized lands had disappeared by erosion and the re-formed lands were accretions to other lands. But this very adroit contention fails to take into consideration the facts previously mentioned,[9] and involved in the 1933 suit, and brought out in the 1945 suit which resulted in the 1946 decree. We mention these facts: ,

A. In 1927 Bass purchased, at a delinquent tax sale, certain lands described as Sec. 1, Twp. 8 S., Rg. 4 W. in Arkansas County.

B. In 1930 Bass—while in actual or constructive possession of certain definitely pointed out and mutually understood lands—conveyed them to Willey describing the lands as Sec. 1, Twp. 8 S., Rg. 4 W. in Arkansas County.

C. Bass then rented from Willey the same lands described the same way, and

D. The lands which the 1946 injunction decree covered were the same lands that Bass had conveyed to Willey in 1930 and rented from Willey.

Whether the lands involved in the 1946 decree should have been described as Sec. 1, Twp. 8 S., Rg. 4 W. in Arkansas County or should have been described as accre-

[8] Appellant cites *McDonald* v. *Fort Smith & Western Railroad Company*, 105 Ark. 5, 150 S. W. 135, as follows: "A judgment rendered by a court without jurisdiction is void; and to have such jurisdiction, the court must have jurisdiction both over the subject matter of the suit and the parties thereto." From this appellant argues that there was no land—i.e. Sec. 1—in existence over which the court had jurisdiction.

[9] See the facts recited in paragraph numbered 2 of the chronological listing, *supra*.

tions to some other lands is immaterial. The fact remains that, regardless of description, Bass had conveyed certain definite lands to Willey and rented the same definite lands from Willey and had no right to cut timber therefrom. Bass used his own language in describing the lands he purported to convey to Willey and to lease from him; and cannot now be heard to claim against Willey that no such lands existed. In short, Bass is estopped.[10]

The recital of the facts makes the estoppel so clear that exhaustive citation of authorities is unnecessary. It is well established that a grantor cannot dispute the existence of property mentioned in his conveyance. (See *Rogers* v. *Bollinger*, 59 Ark. 12, 26 S. W. 12.) Even if it had been claimed that when he conveyed to Willey, Bass was acting as guardian of his minor son and therefore was not personally estopped by the conveyance made in his representative capacity,[11] nevertheless, Bass—as an individual—rented the same land from Willey; and as tenant is estopped, under such circumstances,[12] to deny the landlord's title to the leased premises. (See *Lewis* v. *Harper*, 149 Ark. 43, 231 S. W. 874.)

For the reasons herein stated, the Chancery Court was correct in refusing to vacate the 1946 decree.

Affirmed.

Ed. F. McFaddin, Justice. In his petition for rehearing appellant points out:

(1)—That in 1946 Bass was enjoined from trespassing, etc. on the lands described as follows: "Section one (1), Township eight (8) South, Range four (4) West and/or the accretions adjoining same or contiguous thereto, all in the Southern District of Arkansas County, Arkansas";

---

[10] In 31 C. J. S. 196, there are many cases cited to sustain the statement: "A grantor is estopped to assert anything in derogation of his deed."

[11] It is not necessary for us to decide in this case whether a grantor in a representative capacity is estopped individually by contents of a deed. See 21 C. J. 1104.

[12] Tenant's right to purchase a tax title is not involved in this case. See *Billingsley* v. *Lipscomb*, 211 Ark. 45, 200 S. W. 2d 510, and *Hill* v. *Barnard*, *ante*, p. 29, 224 S. W. 2d 31.

(2)—That in 1947 Willey had a surveyor named Kramer undertake to locate "on the ground" the lands as described above; and

(3)—That at the trial in December, 1948, there was considerable evidence adduced as to whether Kramer's survey was correct.

From the above items, appellant says that by our opinion in this case, we have inferentially approved the Kramer survey; and because of such approval appellant asks a rehearing.

We deny a rehearing; but in order to remove any doubt, we point out that we did not approve the Kramer survey, or any other survey made subsequent to the decree of 1946; we held that the 1946 decree should not be vacated.