BASS *v.* WILLEY.

5-1300                                    304 S. W. 2d 943

Opinion delivered June 17, 1957.

[Rehearing denied Sept. 30, 1957]

*Arthur R. Macom,* for appellant.

*Virgil Roach Moncrief, John W. Moncrief* and *Sharp & Sharp,* for appellee.

GEORGE ROSE SMITH, J.   On March 25, 1946, the appellee's predecessor in title, C. F. Willey, obtained a default decree which found that C. F. Willey was the owner of Fractional Section 1, Township 8 South, Range 4 West, "and all accretions adjoining or contiguous thereto, situate in the Southern district of Arkansas County." The decree enjoined the present appellant, T. P. Bass, from trespassing upon the land, removing timber from it, or interfering in any manner with Willey's possession.

In 1947 Willey filed a petition asserting that Bass had violated the 1946 decree and should be punished for contempt of court.   Bass defended the contempt citation by attempting to prove that the 1946 decree was a nullity. It was his contention that fractional Section One, as originally surveyed by the United States in 1819, had been completely eroded away by a gradual northward movement of the Arkansas river.   Bass further contended that the river, after having eaten away the entire section, had then retreated southwards even beyond its original 1819 channel and by that retreat had re-created land which by the law of accretion became a part of other lands owned by Bass and lying north of what had once been Section One.   It was Bass's theory that the 1946 decree referred only to nonexistent lands and was therefore void.   The chancellor rejected this contention and entered a decree for the plaintiff on December 1, 1948.   We affirmed that decree, on the ground that Bass had conveyed Section One to Willey in 1930 and was accordingly estopped to deny the existence of the property described in his deed. *Bass* v. *Willey,* 216 Ark. 553, 226 S. W. 2d 980.

The present petition, which involves only certain land that lies outside the boundaries of Section One as it was surveyed by the Government in 1819, was filed by

the appellee a few months after our affirmance of the 1948 decree. In this petition Willey charges that Bass has again violated the court's decrees by cutting timber from the area now in controversy. In defending this citation for contempt Bass concedes that he no longer has any claim to the land within the original boundaries of Section One, but he insists that he is entitled to assert title by accretion to land outside the original section. In answer to this contention Willey pleads the 1946 decree and the 1948 decree as *res judicata*. The chancellor, considering this issue upon the present pleadings and the record in *Bass* v. *Willey, supra,* held that Bass is precluded by the doctrine of *res judicata* from disputing Willey's title to the land now in controversy.

We are unable to say that either of the earlier decrees established Willey's title to any land lying outside the boundaries of Section One as it existed in 1819. The 1946 decree may be laid aside without much discussion, for it confirmed Willey's title only to the original section "and all accretions adjoining or contiguous thereto." It is plain enough that this decree left open, as a question of fact, the issue of whether any particular piece of land was actually formed as an accretion to the original section. That is the issue that Bass seeks to have determined in the present phase of the litigation; clearly it is not foreclosed by the 1946 decree.

The more difficult question is whether the 1948 decree went beyond the earlier adjudication and permanently settled this issue of fact. It will be remembered that in 1948 Bass attempted to prove that the original section had been wholly destroyed by erosion and had been later replaced by other land that gradually emerged from the river as an accretion to Bass's property lying farther to the north. Bass undoubtedly contended then, as he contends now, that the re-created land was not an accretion to Section One as it existed in 1819. Since Bass unsuccessfully made that contention in 1948 the appellee very plausibly argues that the issue cannot be re-examined.

Whether the present question of fact was considered by the chancellor in 1948 cannot be definitely determined from the wording of the decree. The chancellor declared that Bass had failed to sustain the burden of proving the nonexistence of Section One. This conclusion disposed of the case; so there was no reason for the chancellor to say whether the original section had been enlarged by accretions. Hence Willey's plea of *res judicata* rests not upon the express language of the 1948 decree but upon the implication that all questions raised were decided adversely to Bass.

This implication, however, is effectively rebutted by the language of the opinion affirming the chancellor's 1948 decree. In that opinion we specifically limited our decision to the single point that the chancellor had correctly refused to set aside the earlier decree of March 25, 1946. The original opinion began with these words: "The only question to be decided on this appeal is whether the Chancery Court was correct in refusing to set aside a decree rendered at a former term. Other questions, injected into the record and briefs, concern (a) accretion and avulsion, and (b) determination of County boundary lines. These matters, however, are not necessary to a decision of the stated question; and are mentioned for the purpose of negativing any idea that this opinion decides them." Despite this language unmistakably limiting the scope of the decision it was suggested in Bass's petition for rehearing that we had inferentially approved a survey that tended to support Willey's position on the matter of accretions. In denying a rehearing we delivered a supplemental opinion that closed with this paragraph: "We deny a rehearing; but in order to remove any doubt, we point out that we did not approve the Kramer survey, or any other survey made subsequent to the decree of 1946; we held that the 1946 decree should not be vacated."

That opinion became the law of the case and governs all future proceedings in this litigation. *Williams* v. *Fulkes,* 103 Ark. 196, 146 S. W. 480. According to that opinion the first contempt proceedings had no force as a

precedent except to hold that the 1946 decree should not be set aside as a nullity. Thus the effect of those proceedings was merely to leave undisturbed the earlier decree, which referred in general terms to Section One and all accretions thereto.

Furthermore, common fairness is opposed to the plea of *res judicata* in this instance. An examination of the record and briefs on the first appeal shows that Bass offered proof to establish the nonexistence of Section One (which of course would also establish the nonexistence of any accretions thereto) and also argued the point on appeal. We declined to decide that issue and limited our holding to another question. It is obvious that we cannot with consistency refuse to consider a question on the first appeal on the ground that it is not presented and then refuse to consider it on the second appeal on the ground that it has already been decided. The doctrine of *res judicata* is designed to prevent a litigant from trying the same issue twice; to apply the doctrine in this case would effectually prevent Bass from trying the issue at all.

Reversed and remanded for further proceedings.

HARRIS, C. J., disqualified and not participating.