CATES *v.* WUNDERLICH.

4-7978                                                    197 S. W. 2d 477

Opinion delivered November 18, 1946.

*Holland & Taylor,* for appellant.

*Wils Davis* and *Taylor & Taylor,* for appellee.

ED. F. McFADDIN, Justice. The question for decision is the validity of a decree rendered by a special chancellor.

Hon. Francis Cherry is, and was at all times herein involved, the regularly elected and commissioned chancellor of the 12th Chancery Circuit, of which the Chickasawba District of Mississippi county is a part. In 1944, Hon. Francis Cherry entered the Armed Forces of the United States. He did not resign as chancellor; and on December 1, 1945, he returned from the Armed Forces and reassumed his duties as chancellor. During the absence of Hon. Francis Cherry, Hon. E. L. Westbrooke, Jr., acted as chancellor. The regular terms of the Chicka-. sawba District Chancery Court are fixed by statute to begin on the fourth Monday in February and the first Monday in September of each year. (§ 2798, Pope's Digest.) Consequently, on the second day of the September, 1945, term the court record shows the following proceedings:

"BE IT REMEMBERED that on this 4th day of September, 1945, being the second day of the convening for the regular September term of the Chancery Court for the Chickasawba District of Mississippi county, Arkansas, and at 10 o'clock on said date, it appeared that for good and sufficient reasons the regular judge of said court will not be able to attend and hold said court, thereupon the Honorable Edward L. Westbrooke, Jr., presided as Special Chancellor, pursuant to an election held under Act 247 of 1943, as certified by Francis Cherry, regular chancellor; and with said regular chancellor absent and unable to continue to hold said court, the regular practicing

attorneys in attendance on said court, upon notice from the clerk, proceeded to then elect Edward L. Westbrooke, Jr., as special chancellor; and after taking the oath required by law, the said Edward L. Westbrooke, Jr., presided as special chancellor, assisted by Harvey Morris, clerk, and Hale Jackson, sheriff. After proclamation being duly made by the sheriff, the said court was opened and the following business had and done. . . ."

Judge Westbrooke held court on September 4, 1945. Then on November 9th he also held court. Judge Cherry resumed his duties as regular chancellor on December 1, 1945, and held court on December 19, 1945. There were no more sittings of the court until the February, 1946, term.

The case of *Cates* v. *Wunderlich* had been pending for some time prior to September, 1945; but all the evidence was not completed in the case until September 6, 1945, when Judge Westbrooke took the case under submission. All parties knew that the case was under submission by Judge Westbrooke at the September, 1945, term, with a decree to be rendered when he decided the issues. A few days prior to Novmber 30, 1945, Judge Westbrooke reached a mental conclusion as to what the decree should be, and advised the attorney for Cates (either by phone or letter) to draw and present to Judge Westbrooke a decree favorable to Cates. On December 20, 1945, Judge Westbrooke received from Cates' attorney the requested decree, which he signed in triplicate, and mailed one copy to the clerk and one copy to each side in the litigation. This decree was dated November 30, 1945, instead of December 20, 1945; and this date of November 30th will be discussed later. The decree was received by the clerk of the court, and entered on December 26, 1945.

When the attorneys for Wunderlich received the decree (on December 22nd) they questioned the right of Judge Westbrooke to render a decree after December 1st; and on January 17, 1946, they filed a motion to have the decree set aside and expunged, because it was not rendered by the regular chancellor. On March 29, 1946, in open court, Hon. Francis Cherry heard the said motion

by. Wunderlich. Both sides were represented; and evidence was presented. Judge Westbrooke was in the courtroom at the time, and made a statement which is incorporated in the evidence. At the conclusion of the hearing, on March 29th, the chancery court set aside the decree rendered by Judge Westbrooke. This is the language of the court:

"I think the decree will have to be vacated and set aside, for the specific reason—and I wish the order would show this—that the special chancellor's decree is effective as of the date he signs it, and the date he signed the decree was after he had ceased to be chancellor and I had taken over the office. . . . The decree will be expunged from the record. . . ."

Cates has appealed from the order of March 29, 1946, expunging the Westbrooke decree. Out of an abundance of precaution, Wunderlich has also filed in this court a petition for writ of certiorari, praying that the chancery record be brought to this court, and the Westbrooke decree be expunged as *coram non judice* and void. So, whether we consider the case on the appeal of Cates or the certiorari petition of Wunderlich, there is presented to us for decision the validity of the decree rendered by Judge Westbrooke in this case.

We reach the conclusion that the Westbrooke decree was *coram non judice* and void. We, therefore, affirm the case on the appeal of Cates, and grant the certiorari, and quash the Westbrooke decree on the petition of Wunderlich.

Our process of reasoning to the conclusion above announced is as follows:

1. *The purported decree by Judge Westbrooke was not rendered until December 20, 1945, which was the date that Judge Westbrooke signed the decree and sent it to the clerk and to opposing counsel.* Judge Westbrooke stated that, after September 6, 1945, (when the evidence was completed) he reviewed the entire record in vacation, and in November, 1945, he notified Cates' attorney by letter or phone to prepare a precedent. This com-

munication to the attorney for Cates was not from the bench of the court, but from the special chancellor in vacation. The evidence is uncontradicted, to the effect that no attorney for Wunderlich received any notice at any time that Judge Westbrooke had reached any mental conclusion in the case, until receipt of the decree dated December 20th. The communication, by letter or phone, to Cates' attorney to prepare a precedent, was in no sense a decree. It was nothing more than a request to prepare a precedent for Judge Westbrooke to consider. The date of November 30th in the said decree seems to have escaped Judge Westbrooke's attention. It was probably placed in the decree by Cates' attorney to correspond with the date of the receipt of the communication from Judge Westbrooke as previously mentioned. We emphatically state that there was no attempt to ''back date'' the paper to circumvent the return of Judge Cherry. The utmost of good faith and professional ethics prevails in all respects.

Attorneys for Cates cite, *inter alia*, *McConnell* v. *Bourland*, 175 Ark. 253, 299 S. W. 44, as authority for the argument that Judge Westbrooke's mental determination in November was equivalent to a decree. But the cited case is no authority to sustain such argument. In the Bourland case the chancellor announced the decree from the bench while the court was in session, and the notation of the decree appeared on the judgment docket. Of course, it was then a decree even though the precedent was prepared and filed later. But in the case at bar there was never a pronouncement by the chancellor from the bench, because the court was in vacation; and there was never any notation on the judgment docket until December 26th. Counsel for Wunderlich call attention to such cases as *Goodbar Shoe Co.* v. *Stewart*, 70 Ark. 407, 68 S. W. 250, and *Redbud Realty Co.* v. *South*, 145 Ark. 604, 224 S. W. 964, to support their argument that a special chancellor cannot render a decree in vacation. We find it unnecessary to discuss this contention, because the facts are clear in this case, to-wit: that the decree of Judge Westbrooke was not rendered until he signed it on December 20, 1945; and, even if otherwise valid, the

decree was not effective until December 26, 1945 (the date it was entered by the clerk). Each of these dates was after Judge Cherry had resumed his duties as regular chancellor.

2. *Judge Westbrooke's power to act in this case ceased on December 1, 1945.* In the court order previously copied, there was the effort to have a special chancellor to act both under said Act 247 of 1943, and also under Article VII, § 21, of the Constitution.

If Judge Westbrooke, in serving as special chancellor, was acting under Act 247 of 1943, then his powers ceased on the return of the regular chancellor, because § 7 of said Act 247 says, in part:

". . . such special chancellor so elected shall hold and discharge the duties of the office until such time as the regularly elected chancellor shall reassume the office, . . ."

In quoting from Act 247 of 1943, we make no pronouncement as to its constitutionality. Counsel for Cates have urged a distinction between the case of *State* v. *Green,* 206 Ark. 361, 176 S. W. 2d 577, and the case at bar—pointing out: that the Green case involved a *circuit* judge; that the method for selecting a special circuit judge is fixed by the Constitution; and that the term of office and manner of selection of a chancery judge is left to the Legislature. We find it unnecessary to discuss this argument, because, if Judge Westbrooke was acting under Act 247 of 1943 and had all the power which that act gave him, and if that act be constitutional, still by the plain terms of the act, Judge Westbrooke's authority ceased when Judge Cherry returned on December 1, 1945.

If Judge Westbrooke, in serving as special chancellor, was acting under the provisions of Article VII, § 21 of the Constitution, likewise, his powers to act as special chancellor, in this case, ceased on December 1, 1945, when Judge Cherry reassumed the duties of the office. The case of *Hyllis* v. *State,* 45 Ark. 478 is clearly in point and decisive. Judge William W. Smith, speaking for

the court in that case, quoted Article VII, § 21 of the Constitution, and then elucidated in the following language:

"Here two distinct classes of cases are contemplated, in which a special judge may be elected:

"1. Where there is no judge of that circuit in commission, or where the commissioned judge is absent, the special judge elected presides during that term, or until the regular judge appears.

"2. The second class of cases is where the regular incumbent is disqualified to sit, or after the commencement of the term falls ill, or dies, or is unable from any cause to hold the court. Here the authority of the special judge continues for the remainder of the term of his election.

"The present case falls under the first class, and the judicial power of the special judge terminated when 'the regular judge' took the bench. If the latter was disqualified to try any causes that remained undisposed of upon the docket, another election was necessary. . . .

"The proceedings subsequent to 'the return of the regular judge' were *coram non judice,* and the judgment was void. The appeal is dismissed, and the case will stand for trial in the court below as it did before the supposed trial took place."

Another case likewise in point is *Fernwood Mining Co.* v. *Pluma,* 136 Ark. 107, 205 S. W. 822.

We, therefore, conclude that the decree rendered by Judge Westbrooke on December 20, 1945, was *coram non judice* and void; and the case of *Cates* v. *Wunderlich* is still pending in the Chickaswaba District of the Mississippi Chancery Court.