Franklin J. DALEY *v.* Marguerite Ann BOROUGHS and Timothy Patrick Daley, Intervenor

91-355                                                                     835 S.W.2d 858

Supreme Court of Arkansas
Opinion delivered July 13, 1992

*Karen Johnson*, for appellant.

*Stephens Law Firm*, by: *Greg Stephens*, for appellee.

ROBERT L. BROWN, Justice. Appellant Franklin J. Daley contests the authority of a special judge to decide the competency issue in this case. He further appeals from the order of the regular probate judge which admitted the will to probate. The regular probate judge's order expressly incorporated the special judge's letter opinion which found that the testator, Robert Patrick Daley, had the capacity to make a will. We hold that the special judge had the authority to act, and we affirm his findings and the subsequent order of the probate court.

The testator had three adult children: appellant Franklin J. Daley, appellee Marguerite Ann Boroughs, and Timothy Patrick Daley, who was disinherited by mutual agreement with the testator. On November 3, 1989, the testator and his wife executed reciprocal wills leaving everything to their two adult children, Franklin and Marguerite, share and share alike. Franklin and

Marguerite were also appointed co-executors of the two wills.

Mrs. Daley predeceased the testator, and the property under her will passed to Franklin and Marguerite. On August 18, 1990, the testator, age seventy-five, was hospitalized at the Veterans Administration Hospital in Little Rock for fever, disorientation, and incontinence. While in the hospital, he asked to see his lawyer. Four days later, on August 21, 1990, attorney Frank Dudeck brought a new will to the hospital for the testator's execution. The attorney had prepared the will after being advised by Marguerite that the testator desired to change his will to leave his house to her and appoint her as sole executrix of his will. The residuary clause was to remain the same with Franklin and Marguerite sharing equally.

Timothy Daley maintained at trial that three weeks before the testator's final illness the testator had agreed with Marguerite that they both would sell their houses, buy a new house, and move in together. The testator, according to Timothy, wanted to be sure that Marguerite had a roof over her head. Timothy added that the testator said everything he had would be hers. Franklin disputed this testimony.

When he was admitted to the hospital, the testator was running a fever and not receiving enough oxygen to function properly. Hospital personnel also wrote on his chart that he was confused and disoriented at times over the next three days and required soft restraints on his wrists and a posey vest to keep him in bed. He was, for the most part, incapable of speaking. On August 21, 1990, at times during the day, he was described on the chart as being more alert and feeling better, and his temperature was about normal. At other times, his temperature had spiked upwards in excess of one hundred degrees.

Four lay witnesses were present in the hospital room beginning at about 6:30 p.m. on August 21, 1990, when the testator considered and then executed the second will: Frank Dudeck, his attorney; Edwina Keith, Dudeck's secretary and a notary public; Joan Gregory, a disinterested witness who happened to be at the hospital; and Robin Gregory, a second disinterested witness who was the daughter of Joan Gregory. Neither Franklin nor Marguerite were present in the room for this meeting or for the will's execution, although Marguerite was at the hospital prior to the

meeting. The time expended on the execution of the second will was estimated at two hours or more by Frank Dudeck. During this period, the testator was in bed. He wore an oxygen mask and could not communicate verbally. Dudeck drew up charts to assist the communication. One chart was marked "Yes" and "No"; the second chart was designated "Marguerite," "Frank," and "Something else." Dudeck posed questions to the testator, using the "Yes" and "No" chart before the witnesses came in. The Gregorys then entered and Dudeck asked questions and referred to the second chart as well as the "Yes" and "No" chart. The testator would answer with a nod or shake of the head, or by pointing his pencil to the correct category on the charts, or by actually making a mark on those charts. The Gregorys estimate that they were in the room for forty-five minutes.

During the conference and with the witnesses present, it developed that the testator did not agree with the new will as drafted. Rather, he wanted Marguerite to take the entire residuary estate and, in effect, to write Franklin out of the will completely. The new will was amended by Dudeck to do that and was then initialed and signed by the testator at approximately 8:45 p.m. The testator died seven hours later on August 22, 1990 at about 3:55 a.m. Probable cause of death was pulmonary complications.

Following the testator's death, there was flurry of activity on the part of Franklin and Marguerite. Franklin asked for and received a temporary injunction against Marguerite's acting as executrix or removing the testator's property. Marguerite requested a temporary restraining order against Franklin's harassing her and was granted an order. Franklin was ordered to prepare an inventory and to return items he took from the testator's residence. Franklin petitioned to probate the November 3, 1989 will, and Marguerite objected on grounds of undue influence. Timothy Daley intervened as an interested party. Marguerite petitioned to probate the August 21, 1990 will. There were other matters and pleadings dealing with the administration of the testator's estate, which were handled by the regular probate judge, Lee Munson. None of these, however, concerned or resolved the issue of the capacity of the testator to make the August 21, 1990 will. A trial was then set to determine which will, if either, should be admitted to probate.

On November 26, 1990, Judge Munson was absent from Pulaski County. A special judge, John Choate, was then duly elected, sworn into office by the deputy clerk, and assumed the bench for that day. At the beginning of the hearing, Franklin objected to the special judge's sitting on the basis that Judge Munson had heard two preliminary matters and was more familiar with the case. The special judge overruled the objection on the basis that the matters heard by Judge Munson were "more of a procedural nature" than dealing with the testator's capacity to make a will.

The competency issue was tried on November 26, 1990, but the trial was not concluded and was continued by Special Judge Choate to February 11, 1991. That day, Judge Munson notified the clerk once again that he was unable to attend and preside over court, whereupon Special Judge Choate was duly elected to preside for a second time. He did so and concluded the trial that same day.

During the two-day trial, hospital physicians and personnel testified, as did the four lay witnesses who were present in the testator's room at the time of explanation and signing. Nurse and physician notes for August 21, 1990, however, were incomplete for an unknown reason. Franklin called an expert witness, Dr. Robert Searcy, a pulmonary specialist, to opine on mental capacity. Dr. Searcy concluded that, based on the medical records, the testator was incompetent to comprehend fully what he was doing in making his will. He admitted, however, that the medical records for August 21, 1990, were sparse and that the testator could have experienced a lucid interval, though this was unlikely.

The special judge rendered his decision by letter opinion dated February 12, 1991. He began by stating that he overruled Franklin's objection to his sitting as special judge because it was made after the parties and the special judge had engaged in a pretrial conference and discussed the issues to be presented. He further noted that the objection was made only after Franklin's counsel learned that a medical witness was not available for trial that day. The special judge then found that the testimony of the four lay witnesses in support of the will outweighed and was more persuasive than that of Dr. Searcy. He also found that the

medical records with the notes by attending physicians and nurses about the testator's mental ability were contradictory. He concluded that the testator was competent when he made his will on August 21, 1990. Following the decision, Judge Munson entered an order on February 21, 1991, which incorporated the special judge's findings on competency and which admitted the second will to probate and appointed Marguerite as executrix.

## I. AUTHORITY OF THE SPECIAL JUDGE TO ACT

Franklin first contends that Special Judge John Choate, though duly elected, committed reversible error in overruling his motion objecting to the special judge's authority to sit. At trial, the objection was couched in terms indicating that the regular probate judge, Lee Munson, had heard preliminary matters prior to the trial and, therefore, was familiar with the parties and their demeanor.

On appeal, Franklin raises a second objection to the special judge's authority which he did not make on the second day of the trial on February 11, 1991. The objection is that the regular probate judge returned to the bench between November 26, 1990, and February 11, 1991, and the authority of the special judge to act was, therefore, truncated under Article 7, section 21 of the Arkansas Constitution. Thus, Franklin maintains that after Judge Munson reassumed the bench, he should have conducted the trial on February 11, 1991, and rendered the decision.

The Arkansas Constitution provides for a procedure to elect special judges when the regular judge fails to attend:

> Whenever the office of judge of the circuit court of any county is vacant at the commencement of a term of such court, or the judge of said court shall fail to attend, the regular practicing attorneys in attendance on said court may meet at 10 o'clock a.m. on the second day of the term, and elect a judge to preside at such court, or until the regular judge shall appear; . . .

Ark. Const. art 7, § 21. Section 21 then goes on to describe the election procedure for a judge who disqualifies which is not the situation in the case before us.

Though the constitution speaks in terms of the circuit court,

it is equally applicable to the election of special chancellors and special probate judges. *See* Ark. Code Ann. § 16-13-310 (1987) (special chancellors elected in the same manner as special circuit judges); Ark. Code Ann. § 28-1-105(a) (1987) (judges of equity matters are probate judges); *see also Fortuna* v. *Achor*, 254 Ark. 1035, 497 S.W.2d 251 (1973).

Here, Judge Munson failed to appear on November 26, 1990, and Special Judge Choate was duly elected. There is no dispute about the legitimacy of his election. He refused to step down when his authority was disputed by Franklin on the basis that Judge Munson had heard preliminary matters, and he had engaged in a pre-trial conference with the attorneys on November 26, 1990, before Franklin objected.

■ The record before us presents no basis for Franklin's assertion that Judge Munson was peculiarly qualified to hear the competency issue and that no special judge could assume that role. The previous hearings before Judge Munson were not recorded, and, by and large, the pleadings relevant to those prior matters were not abstracted. It was Franklin's duty to make a sufficient record evincing error. *Johnson* v. *Lilly*, 308 Ark. 201, 823 S.W.2d 883 (1992). This he failed to do. Special Judge Choate did not abuse his discretion in declining to step down at this juncture.

■■ Nor do we agree that the Arkansas Constitution required Judge Munson to hear the case on the second day of the trial on February 11, 1991, because he had reappeared and sat as probate judge subsequent to the first day of trial. No objection was made to the special judge's sitting on February 11, 1991, but we held early on that consent, either expressly or tacitly given, cannot impart judicial power to a special judge. *Red Bud Realty Co.* v. *Smith*, 145 Ark. 604, 223 S.W.2d 35 (1920); *Hyllis* v. *State*, 45 Ark. 478 (1885). However, we have also held that the elections of special judges, including the reasons for the regular judge's absence, are presumed to be valid. *Titan Oil & Gas* v. *Shipley*, 257 Ark. 278, 517 S.W.2d 210 (1974).

What decides the matter is the fact that Special Judge Choate was duly elected a second time on February 11, 1991, to hear the matter because of Judge Munson's absence from the court. The record shows that Judge Munson's absence and Judge

Choate's availability and election were prearranged, but this procedure does not run afoul of the constitution. Moreover, it would be nonsensical and at odds with judicial economy for the regular judge to rehear the first-day witnesses when the special judge was poised and ready to conclude the matter. In a case where the issue was whether a special circuit judge should rehear all of the testimony that preceded his assumption of the bench after the regular judge became ill, we said:

> It would be an unnecessary delay, expense and vexation to clients in such cases to impanel a new jury and recall witnesses. It is not demanded by the ordinary requirements of justice. The cause properly proceeded.

*Bullock* v. *Neal*, 42 Ark. 278, 281 (1883); *see also* 46 Am. Jur.2d, *Judges*, § 2156, p. 273.

■ Because of judicial economy and because the judge was duly elected to hear the second day of the trial, we hold that his authority to hear and conclude this matter on February 11, 1991, remained intact.

There is, finally, the fact that the special judge issued a letter opinion, and Judge Munson subsequently entered the order admitting the August 21, 1990 will to probate and appointing Marguerite as personal representative. Franklin advances the argument that this converted the special judge into a master and the special judge had no authority to act as one under Ark. R. Civ. P. 53. We do not agree.

■ First, Franklin failed to raise this issue below, and accordingly, has waived the argument for purposes of appeal. *See McElroy* v. *Grisham*, 306 Ark. 14, 810 S.W.2d 933 (1991). The special judge specifically informed the parties at close of trial that he would prepare a letter opinion with his findings and from that the prevailing party could prepare an order for Judge Munson's signature. Franklin did not object to this procedure.

But, in addition, there was no fallacy in the procedure followed by the special judge. He made his findings on the day after the trial on February 12, 1990, when he was still sitting as special judge. Judge Munson then incorporated those findings into his order. We note in this regard that had the special judge signed an order after Judge Munson returned to the bench, the

order would have been subject to challenge. *See Cates* v. *Wunderlich*, 210 Ark. 724, 197 S.W.2d 477 (1946). In *Cates*, we voided the decree of the special chancellor which was entered after he ceased to be chancellor and the regular chancellor had resumed his duties.

In sum, the special judge was correct in hearing this matter to conclusion, and we hold that there was no error in the entry of the order by the regular probate judge incorporating the special judge's findings and admitting the will to probate.

## II. CAPACITY TO MAKE A WILL

For his second point, Franklin argues that the special judge erred in finding the testator competent to make a will and, more specifically, in finding that the testimony of the lay witnesses outweighed that of his expert, Dr. Robert Searcy, and other medical witnesses.

Probate cases are tried de novo on appeal, and this court does not reverse unless the findings of the probate judge are clearly erroneous. *Baerlocker* v. *Highsmith*, 292 Ark. 373, 730 S.W.2d 237 (1987); *Hiler* v. *Cude*, 248 Ark. 1065, 455 S.W.2d 891 (1970). This court will, however, give due deference to the superior position of the probate judge to determine the credibility of the witnesses and the weight to be accorded their testimony. *Id; Reddoch* v. *Blair*, 285 Ark. 446, 688 S.W.2d 286 (1985). The party contesting the validity of the will has the burden of proving by a preponderance of the evidence that the testator lacked mental capacity at the time the will was executed. *Baerlocker* v. *Highsmith, supra; Rose* v. *Dunn*, 284 Ark. 42, 679 S.W.2d 180 (1984); *Abel* v. *Dickinson*, 250 Ark. 638, 467 S.W.2d 154 (1971).

We have further established the test for determining mental capacity in two lines of cases:

> The rule has been generally expressed that sound mind and disposing memory, constituting testamentary capacity, is (a) the ability on the part of the testator to retain in memory without prompting the extent and condition of property to be disposed of; (b) to comprehend to whom he is giving it; and (c) to realize the deserts and relations to him of those whom he excludes from his will. *Taylor* v. *McClintock*, 87 Ark. 243, 112 S.W. 405; *Boone*

v. *Boone*, 114 Ark. 69, 169 S.W. 79; *Mason* v. *Bowen*, 122 Ark. 407, 183 S.W. 973, Ann. Cas. 1917D, 713; *Griffin* v. *Union Trust Company*, 166 Ark. 347, 266 S.W. 289; *Puryear* v. *Puryear*, 192 Ark. 692, 94 S.W.2d 695; *Petree* v. *Petree*, 211 Ark. 654, 201 S.W.2d 1009.

Testamentary capacity means that the testator must be able to retain in his mind, without prompting, the extent and condition of his property, to comprehend to whom he is giving it, and relations of those entitled to his bounty. *Tatum* v. *Chandler*, 229 Ark. 864, 319 S.W.2d 413; *Sullivant* v. *Sullivant*, 236 Ark. 95, 364 S.W.2d 665; *O'Dell* v. *Newton*, 228 Ark. 1069, 312 S.W.2d 339.

*Hiler* v. *Cude*, 248 Ark. at 248, 455 S.W.2d at 898; *see also Rose* v. *Dunn, supra, Baerlocker* v. *Highsmith, supra.* Complete sanity in a medical sense is not essential to testamentary capacity if the power to think rationally existed when the will was made. *Abel* v. *Dickinson, supra; Hiler* v. *Cude, supra; Green* v. *Holland*, 9 Ark. App. 233, 657 S.W.2d 572 (1983). The time to look at a testator's intent to make a will is when the document was executed. *Hiler* v. *Cude, supra; Rogers* v. *Crisp*, 241 Ark. 68, 406 S.W.2d 329 (1966); *Yarbrough* v. *Moses*, 233 Ark. 489, 267 S.W.2d 289 (1954). The testator's condition either before or after the time of making the will is not the test as to his mental capacity but is only relevant as indicating the testator's condition at the time of signing the instrument. *Rogers* v. *Crisp, supra.*

■ We have also recognized that, despite any mental impairment, a testator may sign a will during a period when he or she is experiencing a lucid interval. *Hiler* v. *Cude, supra; Thiel* v. *Mobley*, 223 Ark. 167, 265 S.W.2d 507 (1954); *Green* v. *Holland, supra.*

We cannot say that the record in this case fails to support the special judge's conclusion of competency. Attorney Dudeck, his notary, and the two disinterested witnesses, the Gregorys, were convinced that the testator was competent and aware of what he was doing in leaving everything to Marguerite and in writing Franklin out of his will. Moreover, the medical records, though incomplete on August 21, 1990, are indeed contradictory, as the special judge found. Some medical notations evidence a man who was alert and feeling better and whose temperature was almost

normal on the day of the will's execution; others suggest higher temperature and, two hours after the will signing, physical deterioration.

It is true that the medical records for the previous three days refer to the testator's confusion and disorientation and his need to be restrained. It is further true that the charge nurse, Margaret Townsend, questioned the testator's competency during this period, but she was not on duty on August 21. Dr. Lisa Bishop testified that the testator had trouble following commands and was confused, though she also was not tending the testator the night he executed the will and admitted that she did not know if he was competent at that time. The testimony of Dr. Geisle Urrutibeheity and Dr. Robert Searcy may also cast doubt on the testator's competency, but their testimony is not conclusive on this point. Dr. Urrutibeheity observed the testator two hours after he signed the new will and would offer no opinion at trial as to his competency when he made the will. Dr. Searcy never actually saw the testator and, though he posited a theory of incompetency based on the incomplete medical records, he admitted the possibility of a lucid interval and that eyewitness accounts would have validity.

Franklin also emphasizes the inconsistencies in the testimony of the four lay witnesses who support the will. Inconsistencies may exist as to precise length of time of the four witnesses in the testator's room, the medical equipment used by the testator, and the medical personnel who entered. Those inconsistencies, however, are not of such moment as to reverse the decision of the special judge. Nor does the fact that the Gregorys erred on some of the particulars in the will militate against competency. Whether the witnesses can recite verbatim the terms of the will is not the crucial issue. The issue is whether the testator had the mental capacity to make a will.

Deathbed wills must be carefully scrutinized by the court of this state because of the doubts and suspicions that they necessarily raise. We have no doubt that such scrutiny was given in the instant case and that the special judge carefully weighed the evidence before him and after doing so reached his decision in favor of competency. In these cases, credibility of the witnesses is extremely important, and we emphasize the obvious point that

the special judge was privy to the witnesses and had the benefit of assessing their demeanor. *See Edwards* v. *Vaught*, 284 Ark. 262, 681 S.W.2d 322 (1984). All four witnesses who were in the testator's room at the time of explanation and execution were certain about the testator's understanding of his property, his heirs, and the identity of those to whom he wished to leave his property. Frank Dudeck and the Gregorys were particularly adamant and descriptive about the testator's intentions. Two of those witnesses — the Gregorys — were disinterested and had no formal connection with the lawyers or the parties in this case. And the signing took place without the major distributee under the new will — Marguerite — being present in the room. There was, too, the testimony of Timothy Daley that the testator, prior to his final illness, had made statements suggesting that he wanted Marguerite to have a roof over her head and be taken care of. We further are persuaded by the fact that the testator amended his will in the hospital room and wrote Franklin completely out of it at that time. This was a radical departure from the changes that Marguerite had initially conveyed to the lawyer at the direction of her father.

Though suspicions may abound under circumstances of this sort, we cannot say that the special judge clearly erred in his decision.

The appellee, Marguerite Boroughs, also moves to strike the appellant's preliminary statement or, alternatively, the statement of the case as argumentative and too long and for costs occasioned by her preparation of a supplemental abstract. The appellant did have a preliminary statement that was three and one-half pages in length and a statement of the case that was one and one-half pages. Our Rules provide for a statement of the case without argument "ordinarily not exceeding two pages in length." Ark. Sup. Ct. R. 9(b). Here, the total was five pages, and the statements were perhaps less than balanced in their description of the facts. Our clearly stated preference is as set out above in our rule, and, in appropriate cases, we will strike overly long and argumentative statements. We do not believe the circumstances in this case warrant that either statement be struck. Also, though we observe minor discrepancies in the appellant's abstract, we do not see them as so egregious as to warrant the payment of costs to the appellee. In this regard, much of the

appellee's supplemental abstract is duplicative of the appellant's abstract.

The decision is affirmed. The appellee's motion to strike and for costs is denied.

NEWBERN, J., not participating.