## Phillip TRAVIS *v.* STATE of Arkansas

CR 96-1466 . 944 S.W.2d 96

Supreme Court of Arkansas
Opinion delivered May 5, 1997
[Petition for rehearing denied June 9, 1997.]

444

*Rice, Adams & Pace, P.A.*, by: *Kelly M. Pace*, for appellant.

*Winston Bryant*, Att'y Gen., by: *David R. Raupp*, Asst. Att'y Gen., for appellee.

ANNABELLE CLINTON IMBER, Justice. The appellant was convicted of rape and residential burglary. On appeal, he raises six point of error. We find no error and affirm.

At trial, the seventeen-year-old victim testified that on February 27, 1996, she was at home along with her brother, Christopher, who was eight. After the victim went to sleep with her brother late that night, she woke up to find a man holding a knife in her room. She described the individual as skinny and about six feet tall, with braided hair, and a large nose and lips. He wore a jacket or thick shirt with a blue and black square pattern. While the lights were not on in her room, she said that light came through her window because the blinds did not cover the entire window.

The victim testified that her attacker told her to get up, placed the knife around her neck, and took her into her brother's room, where he forced her to perform oral sex. He then made the victim get on the floor, ripped her panties, and attempted vaginal intercourse while he wore a condom. As she was being raped, she heard her brother yelling and pushing on the door, attempting to get into the room. When Christopher became quiet, the attacker ran out of the house.

The victim first called her boyfriend, Raymond Williams, who came over to the house. She then called the police sometime after 4:00 a.m. She told the police that she thought she might know who raped her from the way he looked and his voice. She explained that a man had been calling her over the phone prior to the rape; this man had explained to her during these phone conversations that he had obtained her number from Shelby Smith. This caller had described himself to her as light-skinned, with braided hair, similar in looks to two rappers, one named "Mystical" and another from the group "Criss Cross." The caller also

told her that he wanted to come over to her house and that he lived at his sister's house, which was behind the victim's home. The victim told the caller that she had a boyfriend. The victim also told the caller when and where her mother worked. Eventually these phone calls became a problem, and the victim asked Shelby Smith to tell the caller to stop calling her. The victim testified that she was positive that the voice on the phone was the same as that of her assailant on the night of the rape.

On the day of the rape, the police went to the victim's house and showed her a photo spread of six suspects. The victim immediately identified picture number three, Travis, as her attacker. She said she was positive picture number three was her assailant. The next day, she went to the police station where she was shown the same photo spread again, picking number three. The victim and her brother also made in-court identifications of Travis. The jury convicted Travis of rape and burglary, sentencing him to eighty and twenty years imprisonment, respectively. Travis now brings the present appeal, raising six points of error.

### 1. Sufficiency of the Evidence.

Travis initially challenges the sufficiency of the evidence to support his convictions. However, Travis has failed to preserve this issue for appellate review. At the close of the State's case, defense counsel moved as follows:

> In this case specifically, I guess, the State has failed to prove or to even show that there is any evidence to indicate that Phillip Travis specifically has engaged in any activity that would be constituted as rape and burglary in this matter.

The trial court denied this motion, and the defense later renewed at the end of their case:

> Your honor, at this time I would like to renew my motion for directed verdict. Specifically that I stated, I don't believe the State's presented evidence to go to meet their burden on both counts of the residential burglary and the rape charge. Specifically I don't believe, other than some broad generalized statements made from [the victim], there's any other evidence at all connecting Phillip Travis to a crime.

Again, this motion was denied.

■ A directed-verdict motion based on insufficiency of the evidence must specify the respect in which the evidence is deficient. Ark. R. Crim. P. 33.1. As we stated in *Walker v. State*, 318 Ark. 107, 883 S.W.2d 831 (1994), "a motion for a directed verdict in a criminal case must state the specific ground of the motion." This court has also explained that the proof of the element of the crime that is alleged to be missing must be specifically identified in a motion for directed verdict. *Webb v. State*, 327 Ark. 51, 938 S.W.2d 806 (1997); *Lovelady v. State*, 326 Ark. 196, 931 S.W.2d 430 (1996). In *Webb, supra*, the following motions were held to be general and thus insufficient for appellate review of the sufficiency of the evidence:

> Your Honor, the defendant Anthony Webb would move for a directed verdict of acquittal, stating that the State has not provided a prima facie case of capital murder against Anthony Webb and makes a motion that the Court enter a finding of a directed verdict of acquittal on the charges of capital murder both as to Aurora Carney and James Graves and further wants to reallege and readopt the arguments and the contention about the admissions as previously made.

> Your Honor, at this time the defense would renew its motion for a directed verdict of acquittal indicating that the State has not provided prima facie evidence of the defendant's guilt of capital murder of either Aurora Carney or James Graves.

Likewise, the following motion and renewal was rejected as non-specific so as to preserve sufficiency for appellate review in *Lovelady, supra*:

> The defense would move that the charges against the defendant be dismissed on the basis that the State has failed to meet its burden of proof.

The State cites to *Helton v. State*, 320 Ark. 352, 896 S.W.2d 887 (1995), where the following motions were not sufficiently specific:

> Make a motion at this time for a directed verdict on the charge of rape in that there's not been significant evidence which would lead to a conclusion by the jury that he's guilty of rape.

The defense renews its motions for a directed verdict on the grounds previously stated.

■ In the present case, Travis's directed verdict motions likewise failed to specifically identify the proof of the element of the crime that was alleged to be missing. We thus decline to reach the merits of Travis's challenge to the sufficiency of the evidence.

## 2. Special Judge.

Prior to the beginning of trial, the regular circuit judge was replaced by a special judge, and Travis's jury trial was conducted before the special judge. On appeal, Travis brings two challenges to the special judge. The first is that the regular circuit judge was peculiarly qualified to hear the case, and thus the special judge should have stepped down. The second is a challenge to the special judge's election.

On the day of trial, before the special judge, the following colloquy occurred after taking up a number of pre-trial matters:

SPECIAL JUDGE: Okay. All right. Is there anything else that is relevant that could potentially keep this case from proceeding?

PROSECUTOR: Not that I'm aware of.

DEFENSE COUNSEL: I think that since [the regular circuit judge] heard a couple of hearings on this matter and they're pretty important. I know now the State's raising some issues about specifically what information should and shouldn't be kept in and out.

SPECIAL JUDGE: I've reviewed the record in that, Mr. Thompson, and unless you're accusing Mrs. Ator of being untruthful now.

DEFENSE COUNSEL: No, that's not the point I'm trying to get at. The point is since [the regular circuit judge] has already heard several hearings in this matter, we would rather [the regular circuit judge] try the case.

SPECIAL JUDGE: And if you're making that motion, you, of course, have that right, and it's within the Court's discretion, and that's going to be denied for right now.

█ Travis stated that he would "rather" have the regular circuit judge hear the case. The special judge treated this expressed preference as a motion, and denied it. Travis cites to no authority for the proposition that he has the right to a particular trial judge throughout the course of the trial simply because that judge had conducted certain preliminary hearings. The record does not show that the regular judge was peculiarly qualified to try the case. *See Daley v. Boroughs*, 310 Ark. 274, 835 S.W.2d 858 (1992). Moreover, the special judge specifically stated that she had reviewed the record with regard to the pretrial rulings made by the regular judge. Based on this record, we cannot say that the special judge abused her discretion in refusing to step down.

With regard to Travis's constitutional attack on the special judge's election, the State responds that Travis has failed to preserve this issue for review. We agree. Travis argues that he was denied his right "to have a special judge elected according to the Constitution of Arkansas." For his sole citation to authority, he cites to Ark. Const. art. 7, § 21, governing the procedure for electing special judges, and our Administrative Order No. 1, which further prescribes the manner by which such judges shall be elected.

█ However, Travis failed to make a challenge to the special judge's election below. We have often held that this court will not address arguments, even constitutional arguments, raised for the first time on appeal. *Dulaney v. State*, 327 Ark. 30, 937 S.W.2d 162 (1997). The elections of special judges, including the reasons for the regular judge's absence, are presumed to be valid. *Daley v. Boroughs*, 310 Ark. 274, 835 S.W.2d 858 (1992) (*citing Titan Oil & Gas Co. v. Shipley*, 257 Ark. 278, 517 S.W.2d 210 (1974)). Moreover, it is the appellant's burden to produce a record showing that an attack on the election was made in the trial court. *Titan Oil & Gas Co. v. Shipley*, 257 Ark. 278, 517 S.W.2d 210 (1974).

█ Because the elections of special judges are presumed to be valid, and because the record fails to show any objection to the special judge's election below, we are prevented from reaching the merits of Travis's constitutional challenge.

### 3. *AMCI 2d 9404 Jury Instruction.*

For this point, the appellant argues that the trial court erred in instructing the jury about Travis's potential parole eligibility, pursuant to AMCI 2d 9404. The thrust of his argument is that Arkansas's statutory sentencing scheme, which includes the law applicable to parole as "evidence relevant to sentencing," Ark. Code Ann. § 16-97-103(1) (Supp. 1995), is in conflict with our rules. Travis specifically cites *Haynes v. State*, 311 Ark. 651, 846 S.W.2d 179 (1993) (holding that "neither the trial court nor counsel should comment on parole") and *Andrews v. State*, 251 Ark. 279, 472 S.W.2d 86 (1971) (holding that parole should not be discussed because the jury would be inclined to give excessive punishment), in support of his argument that Ark. Code Ann. § 16-97-103(1) is an evidentiary/procedural rule in conflict with our prior rulings, and thus an impermissible infringement by the legislature. This argument is without merit.

Since the enactment of the criminal code, we have said that sentencing is controlled by statute. *See Cody v. State*, 326 Ark. 85, 929 S.W.2d 159 (1996); *Easley v. State*, 274 Ark. 215, 623 S.W.2d 189 (1981). Ark. Code Ann. § 16-97-103(1) was enacted as part of Act 535 of 1993, where the General Assembly made changes in procedures governing jury trials by providing for separate consideration of guilt and sentencing. Among other things, Act 535 defines what is "evidence relevant to sentencing," part of which includes parole eligibility.

Simply put, Travis fails to cite to any express rule of this court with which Ark. Code Ann. § 16-97-103(1) conflicts. Our holdings to which Travis cites were handed down prior to the enactment of Act 535 of 1993. Because of the deference this court has given to the General Assembly in matters pertaining to sentencing, *see Cody, supra*, and because Travis fails to cite an express rule of this court which conflicts with Ark. Code Ann. § 16-97-103(1), we affirm as to this point.

### 4. Denial of Motion for Continuance.

On the day of trial, Travis moved for a continuance arguing that he had not had an adequate opportunity to view the crime scene or to locate individuals who could testify as to weather conditions on the night of the rape. The trial court denied the continuance, which Travis argues is reversible error.

■ The decision to grant or deny a continuance is within the sound discretion of the trial court, and the decision will not be reversed absent an abuse of discretion amounting to a denial of justice. *Turner v. State*, 326 Ark. 115, 931 S.W.2d 86 (1996). Continuance motions are in part governed by Ark. R. Crim. P. 27.3, which provides as follows:

> The court shall grant a continuance only upon a showing of good cause and only for so long as is necessary, taking into account not only the request or consent of the prosecuting attorney or defense counsel, but also the public interest in prompt disposition of the case.

■ This court has also identified several factors for the trial court's consideration in deciding a continuance motion: (1) the diligence of the movant; (2) the probable effect of the testimony at trial; (3) the likelihood of procuring the attendance of the witness in the event of a postponement; and (4) the filing of an affidavit, stating not only what facts the witness would prove, but also that the appellant believes them to be true. *Turner, supra; see also* Ark. Code Ann. § 16-63-402(a) (1987). The appellant must also demonstrate prejudice from the denial of the continuance. *Lee v. State*, 326 Ark. 529, 932 S.W.2d 756 (1996); *Davis v. State*, 318 Ark. 212, 885 S.W.2d 292 (1994).

■ On the day of trial, August 14, 1996, Travis argued that he did not have enough time to investigate lighting conditions on the night in question, claiming that he only discovered such evidence would be relevant when the victim testified at a pretrial hearing on July 19, 1996. However, we note that Travis failed to file an affidavit in substantial compliance with Ark. Code Ann. § 16-63-402(a). *See Griffin v. State*, 322 Ark. 206, 909 S.W.2d 625 (1995) ("trial court does not abuse its discretion in denying a

request for continuance when the motion is not in substantial compliance with Ark. Code Ann. § 16-63-402(a)"). Moreover, based on these facts, we find that Travis has failed to demonstrate how he was prejudiced by the denial of the continuance. We cannot say that the trial court abused its discretion in denying the continuance on the day of trial.

### 5.  Disclosure to Defendant under Ark. R. Crim. P. 17.1(a).

For this point, Travis claims that the trial court erred in allowing the introduction of testimony from the victim's brother, Christopher, because the State failed to provide him with the brother's statement, or the substance of his testimony, in violation of the State's discovery obligations. It is undisputed that the State provided Christopher's name and address to Travis as a potential witness. Ark. R. Crim. P. 17.1(a)(ii) also requires the State to disclose any written or recorded statements and the substance of any oral statements from the defendant or a codefendant.

The evidence simply suggests that the State had no written or recorded statements from Christopher. Travis instead relies on an exchange between the prosecutor and Christopher during his direct examination, where the prosecutor asks, "Did we talk about what happened to [the victim] in your house?", to argue that Christopher had somehow provided a written or recorded statement to the State. However, we have held that Ark. R. Crim. P. 17.1(a)(i) does not require the State to disclose the substance of the testimony of the witnesses it intends to call. *Donihoo v. State*, 325 Ark. 483, 931 S.W.2d 69 (1996); *Holloway v. State*, 310 Ark. 473, 837 S.W.2d 464 (1992). We thus affirm as to this point.

### 6.  In-Court Identification.

This court will not reverse a trial court's ruling on the admissibility of an in-court identification unless the ruling is clearly erroneous under the totality of the circumstances. *Prowell v. State*, 324 Ark. 335, 921 S.W.2d 585 (1996). In determining whether an in-court identification is admissible, this court looks first at whether the pretrial identification procedure was unneces-

sarily suggestive or otherwise constitutionally suspect; it is the appellant's burden to show that the pretrial identification procedure was suspect. *Id.* A pretrial identification violates the Due Process Clause when there are suggestive elements in the identification procedure that make it all but inevitable that the victim will identify one person as the culprit. *Id.* This court will not inject itself into the process of determining reliability unless there is a very substantial likelihood of irreparable misidentification. *King v. State,* 323 Ark. 558, 916 S.W.2d 725 (1996); *Moore v. State,* 304 Ark. 558, 803 S.W.2d 552 (1991).

For this point, Travis fails to explain in what manner the actual photo lineup was unduly suggestive. Rather, he argues that the victim's identification is unreliable because she may have obtained a physical description of him from previous telephone calls, and not from actually seeing him during the rape. This is simply a credibility argument, and has nothing to do with how the photo lineup itself may have been unduly suggestive.

A review of the photo lineup shows that it contains photographs of six African-American males, who all have similar hair and facial features. The victim testified that when she was shown the photo spread by the police, no one else suggested who she should pick out. Detective Ingram, who assembled the photo spread, testified that in choosing the pictures, he considered "the age group, the facial features, the type of hair, race, all being pretty much the same." Based on these facts, Travis has failed to meet his burden to show that the photo lineup was unnecessarily suggestive or otherwise constitutionally suspect. Accordingly, we cannot say that the trial court was clearly erroneous in upholding the admissibility of the in-court identification.

Affirmed.