Cite as 2020 Ark. 255

# SUPREME COURT OF ARKANSAS

No. CV-19-985

|  |  |
|---|---|
| ANARIAN CHAD JACKSON<br>APPELLANT<br><br>V.<br><br>WENDY KELLEY, DIRECTOR,<br>ARKANSAS DEPARTMENT OF<br>CORRECTION<br>APPELLEE | **Opinion Delivered:** June 18, 2020<br><br>PRO SE APPEAL FROM THE LINCOLN<br>COUNTY CIRCUIT COURT; MOTION<br>TO FILE AN AMENDED REPLY BRIEF;<br>MOTION TO FILE AMENDMENT TO<br>APPELLANT REPLY BRIEF<br>[NO. 40CV-19-125]<br><br>HONORABLE JODI RAINES DENNIS,<br>JUDGE<br><br><u>AFFIRMED; MOTIONS DENIED</u>. |

**ROBIN F. WYNNE, Associate Justice**

Appellant Anarian Chad Jackson filed in the circuit court in the county where he is incarcerated a petition for writ of habeas corpus pursuant to Arkansas Code Annotated section 16-112-101 (Repl. 2016). Jackson alleged in the petition that the judgment and commitment order was illegal on its face because it was signed by Judge Bogard, who did not preside at his trial and lacked jurisdiction to enter the judgment; that the trial court exceeded its jurisdiction when it admitted into evidence the pretrial statement of Takesha Griffin; and that Judge Bogard lacked jurisdiction to enter the judgment because he failed to recuse himself after Jackson threatened to kill Judge Bogard's wife. The circuit court denied and dismissed the petition. On appeal, Jackson raises the same claims for habeas relief raised in the petition filed below and further contends that the circuit court erred

when it failed to conduct a hearing on his petition.[1] We find no error and affirm. Jackson subsequently filed two motions to amend his reply brief and submitted a tendered reply brief upon filing his second motion to amend. The motions are denied.

## I. *Standard of Review*

A circuit court's decision on a petition for writ of habeas corpus will be upheld unless it is clearly erroneous. *Hobbs v. Gordon*, 2014 Ark. 225, 434 S.W.3d 364. A decision is clearly erroneous when, although there is evidence to support it, the appellate court, after reviewing the entire evidence, is left with the definite and firm conviction that a mistake has been made. *Id.*

## II. *Nature of the Writ*

A writ of habeas corpus is proper when a judgment and commitment order is invalid on its face or when a circuit court lacks jurisdiction over the cause. *Foreman v. State*, 2019 Ark. 108, 571 S.W.3d 484. Jurisdiction is the power of the court to hear and determine the subject matter in controversy. *Baker v. Norris*, 369 Ark. 405, 255 S.W.3d 466 (2007). When the trial court has personal jurisdiction over the appellant and also has jurisdiction over the subject matter, the court has authority to render the judgment. *Johnson v. State*, 298 Ark. 479, 769 S.W.2d 3 (1989). Under our statute, a petitioner for the writ who does not allege his or her actual innocence and proceed under Act 1780 of 2001

---

[1]In his brief on appeal, Jackson alternatively asks for relief pursuant to a petition for certiorari and to recall the mandate on direct appeal of the judgment of conviction. Because Jackson's requests for these alternative forms of relief are irrelevant to the issues underlying this appeal, the requests need not be addressed.

must plead either the facial invalidity of the judgment or the lack of jurisdiction by the trial court and make a showing, by affidavit or other evidence, of probable cause to believe that he or she is being illegally detained. Ark. Code Ann. § 16-112-103(a)(1) (Repl. 2016). Unless the petitioner can show that the trial court lacked jurisdiction or that the judgment was invalid on its face, there is no basis for a finding that a writ of habeas corpus should issue. *Fields v. Hobbs*, 2013 Ark. 416. Moreover, a habeas proceeding does not afford a prisoner an opportunity to retry his or her case, and it is not a substitute for direct appeal or postconviction relief. *Philyaw v. Kelley*, 2015 Ark. 465, 477 S.W.3d 503. This court views an issue of a void or an illegal sentence as being an issue of subject-matter jurisdiction. *Collier v. Kelley*, 2020 Ark. 77, 594 S.W.3d 50. A sentence is void or illegal when the trial court lacks the authority to impose it. *Id.* A trial court has subject-matter jurisdiction to hear and determine cases involving violations of criminal statutes. *Id.*

III. *Background*

In 2003, a Pulaski County Circuit Court jury convicted Jackson of first-degree murder, and he was sentenced to life imprisonment. This court affirmed. *Jackson v. State*, 359 Ark. 297, 197 S.W.3d 468 (2004). Jackson subsequently filed a petition for writ of habeas corpus in the Jefferson County Circuit Court alleging that Judge Bogard did not have jurisdiction to enter the judgment of conviction because Judge Bogard had not presided over his trial. The Jefferson County Circuit Court denied the petition because the judge who presided over the trial and the judge who signed the judgment had authority to act in the criminal proceedings because both had been elected within the same judicial

3

district.  *See Jackson v. Kelley*, 2019 Ark. 191, 575 S.W.3d 105.  Without addressing the merits of Jackson's claim, we dismissed the petition because Jackson had been transferred to Lincoln County while the habeas appeal was pending.  *Id.*

IV.  *Claims for Habeas Relief*

As stated above, Jackson alleges for a second time that his judgment of conviction is illegal on its face because it was signed by Judge Bogard, who did not preside over his trial and therefore did not have the authority to sign the judgment.  Jackson is mistaken. Jurisdiction is granted to a particular position—that is, to a particular court—and not to the person who fills it.  *Lukach v. State*, 2018 Ark. 208, 548 S.W.3d 810 (citing *Simpson v. State*, 310 Ark. 493, 837 S.W.2d 475 (1992)).  Here, Judge Bogard was the circuit judge elected in the judicial district where Jackson was tried and convicted, and Judge Bogard had authority to sign the judgment reflecting the jury's verdict.  Jackson's reliance on *Waddle v. Sargent*, 313 Ark. 539, 855 S.W.2d 919 (1993), is misplaced because that case involved the lack of jurisdiction of judges who were not elected in the judicial district where the crime was committed.  Jackson's further reliance on Arkansas Code Annotated section 16-13-211(d) (Repl. 2016) for the proposition that a presiding judge is required to sign the judgment is likewise misplaced because that statute is relevant to proceedings "where a jury is waived and a cause is submitted for trial before the court sitting as a jury."  *See* Ark. Code Ann. § 16-13-211(b).  Here, Jackson was tried by a jury, and this statute is not applicable.

Jackson's additional claims for relief are not cognizable in a habeas proceeding because his claims represent allegations of trial error.  Assertions of trial error and due-

4

process claims do not implicate the facial validity of the judgment or the jurisdiction of the trial court because the writ will not issue to correct errors or irregularities that occurred at trial. *Stephenson v. Kelley*, 2018 Ark. 143, 544 S.W.3d 44. There is no merit to Jackson's claim that the admission into evidence of a particular pretrial statement deprived the court of jurisdiction. A challenge to the admission of evidence is not cognizable in a habeas proceeding. *Tilson v. Kelley*, 2018 Ark. 128, 543 S.W.3d 505. Finally, Jackson's contention that Judge Bogard did not have jurisdiction to enter the judgment because he did not recuse himself is also without merit. Claims of judicial bias amount to allegations of trial error and are not cognizable in habeas proceedings. *Jefferson v. Kelley*, 2017 Ark. 29, 509 S.W.3d 626 (per curiam). A trial judge's failure to recuse himself or herself in accordance with the Canons of Judicial Conduct does not deprive the court of jurisdiction. The circuit court did not clearly err when it denied and dismissed Jackson's habeas petition.

V. *Entitlement to an Evidentiary Hearing*

Jackson contends that the circuit court was required to appoint an attorney and conduct a hearing on his habeas petition. While our statutory habeas corpus scheme contemplates a hearing in the event the writ is issued, there is no requirement that a hearing be given a petitioner regardless of the content of the petition. *Sims v. State*, 2018 Ark. 271, 555 S.W.3d 868. A hearing is not required on a habeas petition—even when the petition alleges an otherwise cognizable ground—when probable cause for the issuance of the writ is not shown by affidavit or other evidence. *Id.* Jackson failed to demonstrate

5

probable cause for the issuance of the writ, and the circuit court was not required to appoint counsel and hold a hearing on his petition.

Affirmed; motions denied.

HART,                                    J.,                                    dissents.

**JOSEPHINE LINKER HART, Justice, dissenting.** The circuit court erred in dismissing Jackson's habeas petition. This case involves the appointment of a special judge who presided at the trial but failed to sign the judgment and commitment order. The circuit court failed to ascertain that the trial court's jurisdiction was proper.

Before Tim Fox was elected to the circuit court, he was a practicing attorney in Pulaski County. Near the end of his tenure, Circuit Judge David Bogard took a vacation and Fox was appointed as a special judge in his stead. However, there is nothing in the record to suggest that the formalities of Administrative Order No. 16 were followed in appointing a special judge.

Amendment 80 § 4 of the Arkansas Constitution gives superintending control of circuit courts to the Supreme Court.[1] It states that "[t]he Supreme Court shall exercise

---

[1]This opinion recognizes that pre-Amendment 80 decisions by this court have held that "the elections of special judges, including the reasons for the regular judge's absence, are presumed to be valid." *Travis v. State*, 328 Ark. 442, 449, 944 S.W.2d 96, 99 (1997) (citing *Daley v. Boroughs*, 310 Ark. 274, 835 S.W.2d 858 (1992) (*citing Titan Oil & Gas Inc. v. Shipley*, 257 Ark. 278, 517 S.W.2d 210 (1974))). "Also, it is the appellant's burden to produce a record showing that an attack on the election was made in the trial court." *Id.*, 944 S.W.2d at 99 (citing *Titan Oil & Gas Inc.*, 257 Ark. 278, 517 S.W.2d 210). However, the modification of our State Constitution upon the adoption of Amendment 80 altered that presumption and the objection requirement.

general superintending control over all courts of the state and may temporarily assign judges, with their consent, to courts or divisions other than that for which they were elected or appointed. These functions shall be administered by the Chief Justice."

Using that superintending authority, this court has created Administrative Order No. 16, which outlines the procedures regarding the assignment of judges. This section clearly establishes the Chief Justice's duties when exercising the duties of appointments granted by Amendment 80.

Administrative Order No. 16(II) outlines three bases for assignment of a special judge.

A.     Disqualification pursuant to Arkansas Code of Judicial Conduct; and or

B.     Temporary inability to serve; or

C.     Other need as determined by the Chief Justice.

Once the threshold for a special judge is met, the Chief Justice's duties are set forth in the next section of the Administrative Order. Section (III) provides, in pertinent part, the rules for requesting an assignment. The section clearly states a trial judge requesting that a judge be assigned shall write a letter to the Chief Judge asking that an assignment be made pursuant to one or more of the bases set forth in Section (II). Also, in cases of disqualification in judicial circuits with more than one judge, the process in the circuit's administrative plan should be followed. All judges in the circuit must be disqualified before an assignment will be made. One judge in the circuit is responsible for writing the

7

letter of request, sufficient in detail to inform the Chief Justice that all judges in the circuit have recused themselves.

Even if, for argument's sake, we can ignore the apparent impropriety in the appointment of the special judge, it is fundamental that all documents generated be signed by the presiding judge. Ark. Sup. Ct. Admin. Order No. 8; *see also* 3A Trial Handbook for Arkansas Lawyers, *Preparation of the Sentencing Order* § 109:51 (2019–2020 ed.).

As noted previously, there is nothing in the record to indicate that the factual predicate for the appointment of a special judge was present. "If the election of a special judge was not held in the prescribed manner, the judge had no judicial authority and any judgment reached by him or her is void." *Found. Telecomms., Inc. v. Moe Studio, Inc.*, 341 Ark. 231, 16 S.W.3d 531 (2001); *see also* 2 Arkansas Civil Practice & Procedure, *Special Judges* § 3:4 (5th ed.). The language used in the constitutional amendment and the Administrative Order indicates these requirements are not discretionary but instead appears to provide that full compliance is necessary before jurisdiction can attach to the proceedings.

In 1909, the General Assembly enacted the following (Laws 1909, p. 147): "Where the judge who presided at any trial shall die, become insane, or for any other cause become incapacitated before he has signed the bill of exceptions, his successor in office shall allow or correct, and sign the said bill of exceptions."

> Prior to the enactment of that statute, it was repeatedly ruled by this court that the bill of exceptions must be signed by the judge who presided at the trial, and that the only remedy, where an appellant lost his right of appeal by

8

reason of death or incapacity of the presiding judge before the bill of exceptions was signed, was by an action in the chancery court for relief, on account of the unavoidable casualty. The act of 1909 sought to remedy this, and to give appellants appropriate relief "where the judge who presided at any trial shall die, become insane, or for any other cause become incapacitated before he has signed the bill of exceptions." The present case does not, however, fall within the terms of that statute, for it does not appear that the presiding judge died, became insane, or in any other way incapacitated. The expiration of his term of office did not incapacitate him from signing the bill of exceptions, and notwithstanding that fact, it was his duty, and not that of the succeeding judge, to sign it.

*O'Neal v. State*, 98 Ark. 449, 451, 136 S.W. 936, 936 (citing *Watkins v. State*, 37 Ark. 370 (1881)).

When we review the facts established in this case, it is apparent that not one circuit judge in the Pulaski County judicial district recused himself or herself from Jackson's case. While the Chief Justice may have some discretion in finding a need to appoint a special judge, he has no discretion to appoint in the absence of all elected judges in the district requesting. Likewise, the requirement of signature is mandatory. There is an appearance of impropriety in the face of the judgement and commitment order when an appointed special judge hears the case and a different judge signs the order. It is important for both the defendant and the public to know that the presiding judge will be accountable for fulfilling the procedures and application of the law during the trial. This accountability for properly performing his or her duties is evidenced by signing the order. This is particularly so when the highest court appoints special judges and then acts as the reviewing court for the conduct of the trial. It stands to reason that the highest court cannot allow any judge other than the presiding judge to attest to the accuracy of the proceedings. When a

presiding judge fails to sign the judgment and commitment order, and a judge who has not been present does so, it invites questions concerning the trial procedure. The judge's attestation has no impact on whether the record is truly accurate.

The majority misunderstands the law concerning jurisdiction when it opined that subject-matter jurisdiction rests solely with the court without the presence of the judge. The judicial district and the judges that sit in that district are authorized by the legislature.[2] A circuit court in each judicial district does so in reference to the number of judges not the number of courts. Here, the majority answers the wrong question. It was not whether the circuit court with Judge Bogard presiding had jurisdiction to hear a criminal proceeding but whether a special judge could do so. It is a question of whether the proper protocols were applied when appointing the special judge and whether that special judge performed his duties in conformity with his appointment and the law. We first note that when the judges in the district where the judge is to be appointed, and this court, i.e., the Chief Justice, do not follow Administrative Order No. 16, jurisdiction is not proper. The basis for Jackson's petition is the validity of his judgment because it was signed by Judge Bogard. Judge Bogard was not the presiding judge during Jackson's trial. Special Judge Tim Fox, a practicing attorney at the time of the trial, was assigned to fill in for Judge Bogard––the elected judge.

---

[2]Specific reference to the Sixth Judicial Circuit can be found in Ark. Code Ann. section 16-13-1401.

The record indicates that Special Judge Tim Fox was temporarily in Bogard's courtroom while he was on vacation and when he eventually retired from the court. However, the problem is that the Sixth Circuit has more than one judge. The question to be reviewed by the fact-finder is whether the proper procedures were followed. The remaining judges of the Sixth Circuit all should have properly recused themselves before the Chief Justice appointed a special judge. The Sixth Circuit is not exempt from the procedures outlined in Administrative Order No. 16. In the interest of justice this court needs to ensure this is not a perfunctory task with no review. The fact-finder should make that determination that the procedures were followed.

The actions taken by Judge Bogard, Special Judge Tim Fox, and the Chief Justice do not conform to the procedures outlined. This court cannot affirm lower-court actions that have been performed outside the established protocols and procedures. Failure to enforce compliance undermines any constitutional and statutory protections that were afforded to the defendant. It creates doubt in the entire judicial process.

The process outlined in Administrative Order No. 16 is a jurisdictional requirement. A presumption that this protocol was followed is not good enough. Therefore, I must dissent.

*Anarian Chad Jackson*, pro se appellant.

*Leslie Rutledge*, Att'y Gen., by: *Jason Michael Johnson*, Ass't Att'y Gen., for appellee.